Dkake, Ch. J.,
delivered the opinion of the court:
Upon the facts as found in this case there can be no question that the delivery of the gold-certificates and gold coin by the cashier of the Merchants’ National Bank to the cashier of the State National Bank vested all the title of the former in the latter, as was held by the Supreme Court in Merchants’ Banlc v. State Banlc, (10 Wall., 604.) For the purposes of this case we need not inquire whether the property of the State Bank in the certificates was general or special; either is sufficient to enable it to assert, as against the United States, all the rights growing out of its ownership of them.
The certificates received by Smith, the cashier of the State Bank, from the Merchants’ Bank, and those purchased with the gold received by him from the same bank, passed out of his hands into those of Hartwell, the disbursing clerk or cashier at the subtreasury; $420,000 from the former to the latter direct, and $60,000 intermediately through Carter; and all were placed by Hartwell among the moneys of the United States in the subtreasury, and were canceled and sent to the Treasury of the Government. The Government has, therefore, in law, in its possession that which is equivalent to so much money obtained from the State Bank; and the question is whether it is lawfully entitled to hold it as against that bank.
If the transfer of the certificates at the subtreasury from Smith’s hands to Hartwell’s could be regarded as a payment of a sum due to the Government, it could not be reclaimed in this action; but we do not consider that there is any ground for its being so regarded. All the facts go to establish the character of the transaction as a mere deposit by the State Bank.
It is found as a fact that, though the certificates were payable at the office of the assistant treasurer in New York, the assistant treasurer at Boston was authorized to redeem them. It appears, further, that the sole purpose of Smith in taking them to the subtreasury was the entirely lawful one of exchanging them for gold. He left them with Hartwell, instead of calling for their instant redemption, because it was represented to him by Carter that it was necessary to leave them for examination. He took Hartwell’s receipts for them in the belief that Hartwell was officially authorized to give them. And the receipts specified deposits, to be returned on demand.
*543 That the deposits were made by the State Bank is not disproved by the' fact that the receipts were given in the name of Mellen, Ward & Co. This does not preclude the claimant from showing that the certificates were in fact its property. In the presence of Hartwell, when Smith found the receipt for $420,000' made payable to Mellen, Ward & Co., he asked Carter why it was made payable so, instead of to him, (Smith ;) and Carter replied that it was because he (Carter) was the party engaged to make the transaction; but that he would indorse the receipt over to Smith, which he did on the spot. If, therefore, it be considered important to trace to Hartwell knowledge that the $420,000 of certificates were not the property of Mellen, Ward & Co., but of the State Bank, it is shown by these facts. But we do not deem this of vital importance, either as to that sum or as to the $60,000 embraced in the second receipt given by Hartwell. The great point is, not in whose name the receipts were given, but whose gold-certificates went into Hartwell’s hands, and for what purpose they went there; and it cannot be doubted that they all belonged to the State Bank, and all went there for the sole purpose, on the part of that bank, of being exchanged for gold.
That Hartwell was the proper person in the subtreasury to-pay gold-certificates presented there for redemption, cannot be questioned. He was there as the Servant of the Government, to receive such certificates from any one presenting them, and to pay out gold for them. When Smith left the certificates with him, instead of demanding the gold for them at the time, he did nothing illegal; nothing which impaired the .State Bank’s right to demand the gold for them. However fraudulent Hart-well’s intent may have been in receiving, and receipting for the certificates, no such intent was known to or suspected by Smith; and it can have no possible effect in destroying the State Bank’s right to the gold. The great fact remains that they were not paid, and that they passed, canceled, into the Treasury, without the Government’s giving any equivalent, without its yielding any consideration, and without its having any title but that of a possession conferred for an entirely different purpose, which has not been fulfilled; and now the question is whether the claimant may recover here the money for those certificates which should have been paid to it in Boston.
*544 Against its right to recover it is claimed that Hartwell was a defaulter to the Government through his loans to Mellen, Ward & Co., and that the certificates were put there by Mellen, Ward & Co. to replace the money he had lent them. But the fact is that, though he wrote ,the receipts in their name, in pursuance of a previous understanding between him and Carter, which was wholly unknown to Smith, and though Smith, ■on Carter’s explanation, took the receipts with Mellen, Ward ■& Co.’s 'indorsement, yet the certificates -were the State Bank’s property, and not'Mellen, Ward & Co.’s, and were deposited by Smith for redemption, and not by Mellen, Ward & Co. as a payment. That Hartwell was a defaulter conferred not the •slightest right upon the Government to refuse to redeem the certificates; for Smith, at the time of the deposit, was totally ignorant of Hartwell’s defalcation, as was everybody in the subtreasury. Had the collector of the port of Boston that day deposited $480,000 at Hartwell’s desk, there would have been just as much right in the Government to hold that on Hartwell’s account as there was to hold these certificates.
The case, then, stated in its simplest form, is this: that the Government asserts its right to set off the debt due to it from, a defaulting clerk against its debt to the State Bank, when the bank is a total stranger to the clerk’s defalcation. Thus testate it is enough. There is no principle of law which can afford any foundation for such a right.
For the Government it is also contended that this action is an attempt to obtain from it, indirectly, compensation or dam ages for the wrongful acts of its officer; and we are referred to decisions of the Supreme Court to the effect that this court cannot take jurisdiction of such an a'ction. The rule laid down by that court is of course well known to us, but it has no application here. The claimant’s right of recovery does not rest upon any wrongful act of any officer of the Government. When Hartwell receiyed the certificates, it was not a wrongful act; when he gave a receipt for them, it-was not a wrongful act; when he charged them off on the books as certificates to be sent to Washington, it was not a wrongful act; nor was it a wrongful act in the chief clerk to cancel and transmit them to Washington; for when Smith deposited them in the sub treasury, the claimant ceased to have any property in the particular certificates deposited, and in lieu thereof stood the obliga *545 tion of the Government to pay the claimant the amount of those certificates in gold coin; which obligation is to this day unfulfilled. The fallacy of the defense lies in the assumption that that obligation is canceled by the fact that the servant of the Government into whose hands the certificates passed, was, when he received them, a debtor of the Government. Upon this fact is based the unwarrantable attempt to apply the claimant’s money — for, in legal effect, the certificates were money — to pay that clerk’s defalcation. It is needless to comment further upon so untenable a defense.
The true character of this action is that of a common-law action of assumpsit for money had and received. The principles and rules applicable to that form of action belong to the elementary knowledge of the bar and the courts. In its spirit and objects it has been likened to a bill in equity, and it lies wherever the defendant has received or obtained possession of the money of the plaintiff, which in equity and good conscience he ought to pay over to the plaintiff. And in order to support this action there need be no privity of contract between the parties, except that which results from one man’s having another’s money, which he has not a right conscientiously to retain. The subject of the action must either originally have been money or that which the parties treated as money. And in regard to things treated as money, the action may be supported by evidence of the defendant’s receipt of bank-notes, or promissory notes, as these gold-certificates were, or a note payable in specific articles; and■ where the money was delivered to the defendant for a particular purpose, to which he refuses to apply it, he cannotfipply it to any other, hut it may he recovered hack hy the depositor, as money had a/nd received for his use. (Greenl. Ev., §§ 118, 119.) These are the only points in regard to this form of action to which, for the purposes of this case, we need to refer.
Tested by them, were this case between individuals, there could hardly be a question of the right of the plaintiff to recover. In our judgment, the right of the claimant to recover here is equally clear. “The defendants have $480,000 in gold coin, which, in equity and good conscience, they ought to pay over to the claimant, and for that sum judgment will be rendered, payable in such coin.