Nqtt, J.,
dissenting:
I dissent from the judgment of the court upon the following points:
1. The Supreme Court has decided, with respect to these charter-parties, that they “ let only the use of the vessel,” the Government being “a mere contractor for a designated service,” the owners “retaining” “ command,” “possession,” and “ control over the navigation,” with all“ the duties and, responsibilities of owners” unchanged. (Leary’s Case, 8 C. Cls. R., p. 31 ; 14 Wall., p. 607.) If there be any principle of maritime law well settled, it is that the owners are entitled to the discretion of their master, and that when a ship leaves port the master is to be considered, for almost all purposes, the owners. Evicting him from the ship is, to all legal intents, evicting them.
It is not to be disputed that a military officer in a military exigency might have taken the vessel; but the taking would be like *590 the impressment of any other property, by right of eminent domain, and not by virtue of a contract which provided that he should not take her, and that the owners should retain u command,” 11 possession,” and 11 control over her navigation.” It may also be conceded that for any damage done to the vessel during the period of impressment, the court is without jurisdiction to afford relief. But the decision of the court goes to an entirely distinct subject, and is in effect that, by virtue of the terms of this contract, which retained for the owuers “ command,vu possession,” and “ control over the navigation,” they might be evicted from their own ship and made to pay her additional running-expenses occasioned solely by their eviction.
The charter-party gave no such right to the charterers in terms, and the decisions of the Supreme Court, as I understand them, determine that it gave no such right by implication. The only right which the charter-party gave to the charterers was this, that if the vessel’s services, while she was navigated by her owners, through their master, did not please them, they might discharge her at any time. Therefore, it appears to me evident that the Government could not charge the vessel, under the contract, with the services of a master whom they had no right, under the contract, to intrude into the “ command” of the vessel.
But if any doubt remained in my mind, it would be removed by the fact that the services of this employé of the Government were not rendered during the exigency, but “ after the return of the vessel from the expedition.” It is manifest that if the military officers had a right under the contract to retain command and possession of the vessel a single day after her return from the expedition, they had a right, under the contract, to retain “command,” “possession,” and “control of her navigation” as many years as they chose to keep her in the service; which is a right the Supreme Court has decided belonged, under the contract, to the other party.
‘2. I also dissent from the conclusion of the court that the payment of this Government employé’s services was voluntary, for the reason that it is expressly found by the court that the owners did not pay until the quartermaster in possession notified them that if they did not they could not have their own vessel turned over to them again.
Payment to recover possession of one’s own property, illegally *591 withheld, is payment under duress of goods, according to all the authorities; and the decision in this case, I think, is expressly in contradiction of the principle laid down in the Boston Bank Cases, (10 C. Cls. R., 519;) that while the Government cannot be held liable for the wrongful acts of its officers,11 neither can the Government set up the torongful acts of its officers to relieve itself from its lawful liabilities.” In this case its lawful liability is the agreed compensation of the vessel, and the wrongful act which it sets up is the illegal action of its quartermaster in compelling the owners to pay the Government’s debt. ,
3. I also dissent from the conclusion which the court has reached on the following finding of fact:
“Till. The claimant became entitled for the services of the Wyoming during the month of August, 1864, to the sum of $5,425; against which the officers of the Government charged the following items:
For repairs put upon her at the Government shop.. $1,257 21
For quartermaster’s stores..... 1,140 80
For commissary stores..... 352 24
For lost time, 14^ days. 2,486 45
5,236 70
“On the 14th of December, 1864, the agent of the owner of the Wyoming addressed to the Quartermaster-General of the Army a written protest against said deductions, declaring the most of them to be unwarranted and unjust; but stating that since it was impossible for him to receive payment without the deduction, he would accept the same, with the understanding, however, that his rights to a future investigation should be in no wise prejudiced. Thereafter said agent received and receipted for the balance of $188.30, which remained of the earnings of the boat for the month of August, after making said deductions. The repairs so charged against said earnings were those put upon her after her return from the Ashepoo-River expedition, and the 14^ days of lost time charged were the days in which she was laid up for those repairs.”
The ground of my dissent is that neither the pleadings, nor the evidence, nor the findings of the court aver that any such articles were ever furnished or any such repairs were ever made. To be available to the defendants in this suit, they clearly must be the subject of either set-off or payment in kind, and neither is alleged by the defendants, nor shown by the evidence, nor found by the court. All that is found is that the quartermaster “charged” them to the owners, and that the owners denied *592 their liability for them. The Supreme Court decided in Henry’s Case (9 C. Cls. R., p. 22) that a finding that a mustering-officer “alleged,” in the proper exercise of his official duty, a regiment to be in such plight as to numbers that he could not legally muster in the claimant, was no finding of the fact $ and the finding in this case, that a quartermaster “charged”- a party with goods as sold and delivered is, I think, no better.