Drake, Ch. J.,
delivered the opinion of the court:
In State National Bank v. United States (10 C. Cls. R., 519) is spread at large the history of one branch of a scheme of embezzlement, conspiracy, and fraud which is probably unsurpassed by any case in the reports of this country.
In the present case, the finding of facts gives at large the history of another branch of the same scheme, devised and carried out by two of the parties to the former one, but with a ■different third party.
The two leading conspirators, in each case, were Edward ■Carter, of the firm of Mellen, Ward & Co., and Julius F. Hart-well, the disbursing clerk, or cashier, of the sub-treasury of the United States in Boston.
The scheme of these two men was thus concisely stated, in .general terms, by the Supreme Court of the United States, in United States v. State Bank (96 U. S. R., 30): “ Hartwell was •cashier of the sub-treasury in Boston. He embezzled a large amount of money belonging to the United States, by lending it to Mellen, Ward & Co. As the time for the examination of the Binds in the sub-treasury approached, Mellen, Ward & Co. endeavored to tide Hartwell over the crisis, and to conceal his ..guilt and their own by the devices out of which this controversy has arisen.”
This is just as applicable, so far as it goes, to the present ■case as to that in which it was written.
The whole amount embezzled by Hartwell and lent to Mellen, Ward & Co. was from a million to a million and a quarter dollars. In the former case the State National Bank of Boston recovered 1480,000. In this case the Newton Bank seeks to recover $371,025. Both of those sums were parts of the greater .amount which went into the hands of Hartwell on the 28th of February, 1867, with the intent to have it appear in his cash the .next day, when the examination of the sub-treasury was to take .place.
The sum claimed by the Newton Bank was obtained, in vari *72 ous ways, by Carter from E. Porter Dyer, jr., tbe cashier of that bank, who knew, from Carter, of Hartwell’s embezzlement, of his lending the money of the United States to Mellen, Ward & Co., and of the scheme of Carter and Hartwell to get the embezzled amount put back into the sub-treasury, so as to appear in Hartwell’s cash when the examination should be made. The different ways in which Carter obtained that large sum from the cashier of a bank whose capital was only $150,000' are summarized by items in finding XXII,. and the facts in regard to each item are fully set forth in the several different findings there referred to; from all of which it appears that, in one way or another, Carter obtained from Dyer, the cashier of the Newton Bank, the sum of $371,025; made up partly of assets of that bank taken from its vaults by Dyer, and delivered to Carter; partly of its money deposited in other banks, and drawn by Carter or Dyer’s cashier checks; partly of the proceeds of other cashier checks drawn by Dyer on other banks, where there were not funds to meet them, and which were sold by Carter; partly by fractional currency and proceeds thereof, and proceeds of internal-reArenue stamps, in the hands .of Carter as agent of the Newton Bank; and partly of a sum due the Newton Bank as interest on government bonds, to collect which Carter held Dyer’s authority as cashier.
All of those items may be properly treated as assets of the Newton Bank, and Carter passed the whole amount of them over to Hartwell; not with any intention on the part of either of them that the amount should be a payment of so much of Mellen, Ward & Co.’s liability to Hartwell for his loan to them of embezzled money of the United States, nor even as a deposit in the sub-treasury for any legitimate purpose ;■ but simply for Hartwell’s use the next day as a sham, to make it appear that his cash was right, and immediately thereafter to be returned by him to Mellen, Ward & Co., who would then replace in the vaults of the Newton Bank the assets taken therefrom, take up Dyer’s outstanding checks, and otherwise save the bank from loss.
Hartwell, instead of carrying out his agreement to return the money to Carter, revealed the Avhole matter to. the chief clerk of the sub-treasury on the afternoon of the 28th of February; and the assistant treasurer refused to. allow any part of' the *73 money to be returned to Carter; and tbe whole of it has ever since remained in the possession of the government.
Upon the case as thus outlined, the simple question of law is, whether the claimant’s property in the assets was, by the fraudulent acts of its cashier and one of its directors, devested out of it and. vested in the defendants. There is not the least ground for answering these points in the affirmative, unless the claimant was privy to those transactions, and allowed its assets to be so used. But there is nothing in the case justifying a remote supposition that any officer, director, or stockholder of the Newton Bank, except Dyer and Carter, the conspirators, had the least knowledge or the faintest suspicion of, or the least cause to suspect, any part of the villainous scheme. It was simply a case of a bank being robbed, and of its stolen assets being put into the hands of the cashier of the sub-treasury, for a purpose which, by no possible view, could, in law, be held to effect a transfer of the bank’s right of property in them, either to him or to the United States.
Such being the case, “ It ought,” in the language of the Supreme Court, of the United States, “ to require neither argument nor authority to support the proposition, that, where the-money or property of an innocent person has gone into the coffers of the nation by means of a fraud to which its agent was a party, such money or property cannot be held by the United States against the claim of the wronged and injured party. The agent was agent for no such purpose. His doings were vitiated by the underlying dishonesty, and could confer no. rights upon his principal.” (United States v. State Bank, ut supra.)
The judgment of the court is, that the claimant recover of the-defendants the sum of $371,025.
Nott, Richardson, and Hunt, JJ., concurred in the foregoing opinion. Davis, J., expressed no opinion.
Besides the above case were three others, growing out of the same transaction, viz: The Eliot National Bank of Boston v. The United States; The Mount Vernon National Bank of Boston v. The Same; Daniel W. Jones, receiver, v. The Same.
It was stated by the counsel in each of these cases, at the trial, that if the court should be of opinion that the Newton *74 Bank was entitled to recover, the claims of the other three claimants would not be pressed, as there was no controversy between them and that bank.
The finding of facts in the Newton Bank Case will stand as the finding in each of the other cases; and in each of them the petition is dismissed.