Howry, J.,
dissenting:
Reprehensible as Colman’s conduct, was from a military point of view, and questionable as his receipt of the money of the- drafted men to pay to substitutes for them may seem to be, measured by those standards of ethics which properly prevail among men of sensibility, I am unable to see whjr a lawful right should be partly defeated by the application of a rule mistaken for one of morals and specialty framed to meet the exigencies of a particular case. Concurring in the judgment of the court as far as it goes, yet it does not seem to go far enough. The judgment should be for $30,049.
The jurisdictional act directs us to render j udgment for such amount as the court may find due the claimant. The amount due is the sum which the findings disclose was unlawfully taken from Colman’s bailee. The funds were mingled indiscriminately in Colman’s package, and contained money received by him in his business as a lawyer, money which the drafted men had delivered to him for a lawful purpose, and money of his own. Iiow are we to determine the quantum of the beneficial interests, respectively, in the absence of all proof? And how are we to determine what part belonged to the drafted men, if any ?
The proceedings of the court-martial are not competent to establish that $18,963 of the money belonged to the drafted men. The court-martial was without jurisdiction to determine that question. The court itself evidently thought so, and the defendants acquiesced in that view of the matter, else the money, or some of it at least, would have been returned to such of the men as were then at hand.
It was lawful for drafted men to hire substitutes and pajr as much as $300 to such substitutes as the Secretary of War might determine to be acceptable. (12 Stat. L., 733.) It was not unlawful for Colman to receive money outside of his duties as as an officer in aid of this purpose. The practice was not commendable for an officer to engage- in this kind of brokerage, but it was neither a crime nor yet a military offense for a provost-marshal to do so. Such mono\- as the *339 drafted men gave to this provost-marshal was not delivered to him in his official capacity. His appointment as such was under the act of March 3,1863 (12 Stat. L., 732), and Colman took upon himself no responsibilities other than those set forth by the act which created the office.he held and the lawful regulations thereunder, and except such as were imposed by the Articles of War (2 Stat. L., 369). Not being a depositary for public funds nor authorized to receive private funds under anjr statute or regulation, and being a statutory officer with powers defined by statute, no responsibility was to bo cast upon him by implication. As then the officer was not the custodian of any of the money contained in the package in virtue of his commission or in the performance of any duty imposed upon him by law, the court-martial could not lawfully take hold and dispose of the funds. Its proceedings were not conclusive in the civil courts. Acting in excess of authority, the sentence of the court was void upon principles quite familiar. (Wilkes v. Dinsman, 7 How., 123; Wise v. Withers, 3 Cranch, 337; Bigelow v. Forrest, 9 Wall., 339; Day v. Micou, 18 Wall., 156.)
The judgment of the Circuit Court of the United States established the invalidity of the sentence of the court-martial so far as it related to the money alleged to have been embezzled. This judgment, having never been appealed from nor reversed, is conclusive upon the issue as to the officer’s right to have the money returned. If for no other reason, it is conclusive because that part of the senteiice relating to the money was unexecuted at the time the judgment of the Circuit Court released the officer from the imprisonment and the obligation to pay as the mere result of the sentence. The sentence relating to the money was not executed by the retention of the package and converting the proceeds into the Treasury.
The attempted confiscation was illegal, but even if it had been legal and yet incomplete the pardon restored to the accused officer the right to be repossessed of that which had been taken from him. The pardon once effective could not be revoked by the same President, much less could it be by his successor.
The money was unlawfully taken from Colman’s bailee. If he had been guihy of embezzlement, outsiders had no more *340 right to take and cover the amount into the Treasury than a post-office inspector would have to take money from a culprit accused of burglary on the ground that it corresponded in amount with the sum the burglar was accused of stealing. In such a case where the culprit was convicted of theft and the inspector turned the money into the Treasury his right to do so has been denied. (United States v. Ferguson, 64 Fed. Rep., 88; 78 Fed. Rep., 103.)
Plaintiff’s right can not be distinguished from those cases where it appears that a bank had in its vaults money of its own, money borrowed for which it had given notes, and money of depositors liable to be taken out bjr them or bjr others to whom they gave checks. The right to recover was not refused on the ground that an undetermined part of the funds belonged to depositors. (State Bank, 10 C. Cls. R., 519, 96 U. S., 30; Newton Bank, 16 C. Cls. R., 54; State National Bank, 17 C. Cls. R., 329, 114 U. S., 401.)
One wrong'does not justify another. If Colman received the money of the drafted men without applying it to the uses for which he received it, the law of the place furnished ample redress for those wrongfully deprived of.it. A rule that would enable the defendants to seize and appropriate an officer’s money under the circumstances shown can not he sanctioned. - The amount is now in the Public Treasury, whore it does not belong. The title was never divested out of the accused officer by virtue of the seizure.
We do not know whether the accused officer ever attempted to settle with any of his clients. Perhaps he never did and perhaps to actions now brought by them or their representatives (with the restoration of the trust) against his estate the', defense of the statute of limitations may be interposed. Such defense would probably be met by asserting the trust character of the holding. These are questions, however, of no concern. The United States in keeping the excess of the judgment are permitted to perpetuate a greater wrong on the officer than Colman perpetrated upon the men whose money he received. The defendants ought not to be permitted to intimate that the officer’s trust obligations have gone unsettled, as their appropriation of the money probably put it out of Colman’s power to discharge them. This is a matter not in the case.