UNITED STATES *v.* STATE BANK.

1  Where a trust-fund has been perverted, the *cestui que trust* can follow it at law as far as it can be traced.
2. The United States cannot, against the claim of an innocent party, hold his money which has gone into its treasury by means of the fraud of its agent.
3. The rules of law applicable to an individual in a like case apply also to the United States. Its sovereignty is in no wise involved.

APPEAL from the Court of Claims.

This action and the following were brought, one by the State National Bank, of Boston, Mass., and the other by the Merchants' National Bank, of the same place, to recover from the United States $480,000 in gold coin, being the amount of certain gold certificates deposited, Feb. 28, 1867, in the sub-treasury at Boston, and on the same day cancelled and forwarded to the Treasurer of the United States at Washington. The cause of action in each case grew out of the same transaction, and the findings of fact by the court below are the same. As they are substantially set forth in the opinion of the court, they are omitted here. The certificates of deposit referred to in the opinion are as follows : —

"UNITED STATES TREASURY, BOSTON.

"Deposited by Mellen, Ward, & Co., of Boston, on acc't of deposit of gold-c't'f's, amount four hundred & twenty thousand dollars; the same to be exchanged for gold-c't'f's, or its equivalent, upon their order or demand.

"J. F. HARTWELL, *Cr.*

"Date, Feb. 28, 1867.

(Indorsed:) "Pay only upon the order of C. H. Smith, cash.

"MELLEN, WARD, & Co

"BOSTON, Feb. 28, 1867."

"UNITED STATES TREASURY, BOSTON.

"Deposited by Mellen, Ward, & Co., of Boston, on acc't of gold certificates deposited. Amount one hundred & sixty thousand dollars, to be exchanged for gold-c't'fs or its equivalent on demand.

"J. F. HARTWELL, *Cr.*

(Indorsed :) "Pay only to the order of C. H. Smith, cash.

"MELLEN, WARD, & Co.

"BOSTON, Feb. 28, 1867."

The Court of Claims rendered judgment in favor of the State Bank and against the Merchants' Bank. From the judgments rendered against them respectively the United States and the Merchants' Bank severally appealed to this court.

*The Solicitor-General,* for the United States.

The State Bank has merely the rights of the owner of a collateral security, and the specific recovery thereof against the United States, who is in possession, is the only relief to which it is entitled.

The Court of Claims has, in certain cases, cognizance of the legal rights of claimants against the United States; but it cannot enforce the moral obligations of the government or bestow its grace. *Gibbons* v. *United States,* 8 Wall. 269.

The charge that the certificates were received by the United States without consideration and in fraud of the rights of the State Bank is unwarranted, and in this proceeding, which is analogous to a petition of right, is inadmissible. The government is not, upon an implied assumpsit, liable for the torts of its officer committed while in its service and apparently for its benefit. *Gibbons* v. *United States, supra; Clark* v. *Dupree,* 2 Dev. (N. C.) L. 411; *Mann* v. *Kendall,* 2 Jones (N. C.) L. 192.

The receipts given to Mellen, Ward, & Co. by Hartwell, in the discharge of his official duty, define the claim. Smith, the cashier of the State Bank, having observed at the time that they were so given, they were thereupon indorsed by that firm to him as cashier. As the ordinary vouchers of such transactions, they measure the quality and degree of the obligation of the government, and obviously were to be surrendered whenever a successful demand was made for the fulfilment of the contract, whether at the sub-treasury or in a court. They were

neither declared upon nor produced in the course of the trial. In this connection, it will be observed that the first receipt is perhaps negotiable, *Miller* v. *Austen*, 13 How. 218 ; and, therefore, like all other papers of its class, cannot in general be recovered upon, unless produced at the trial.

If, however, the former receipt be not negotiable, then both receipts express the contracts made by the United States in regard to the deposits, not only as to their substance but also as to the parties by whom they were to be enforced.

*Mr. C. B. Goodrich,* for the State Bank.

The doctrine of *Bayne* v. *United States* (93 U. S. 642), that public money obtained from a disbursing officer, without consideration, is money of the United States, applies where, as in this case, the United States, without consideration and by the fraud of its officer, receives the money of an individual. His right to it remains ; and where, as in this instance, the government is liable to suit, may be judicially enforced. In such a case between private parties, assumpsit lies. *Moses* v. *Macferlan,* 2 Burr. 1005.

Where a party has acquired the legal right to property to which another has the better right, a court of equity will convert him into a trustee of the true owner, and compel him to convey the legal title. *Stark* v. *Starrs*, 6 Wall. 419 ; *Meader* v. *Norton,* 11 id. 458. See also *United States* v. *Buford*, 3 Pet. 12.

*Mr. Sidney Bartlett,* for the banks.

The legal title to the certificates was in the Merchants' Bank, and by the subsequent delivery of them was vested in the State Bank. *Merchants' Bank* v. *State Bank,* 6 Wall. 604.

The certificates were obtained by the cashier of the subtreasury at Boston, not by larceny nor by a fraudulent contract, in his individual right, but by a contract in the name of the United States, which he was by law fully authorized to make. The government is not, under such circumstances, a *bona fide* purchaser without notice, but is responsible for money derived under the contract and placed in its coffers. To hold otherwise, because the contract was part of a secret scheme of the cashier to appropriate to his own use the money after its receipt and to give a fraudulent voucher therefor, would be extraordinary indeed.

By cancelling the gold certificates, a person, had the contract thus cancelled been made with him, would be rendered liable for the sums due. In this case, the petition sets out all the facts ; and if by law the liability of the government is founded either on its contract contained in the certificates, or on its treating them as money, the pleadings are sufficient to sustain a judgment therefor.

MR. JUSTICE SWAYNE delivered the opinion of the court.

Upon analyzing this case as it is presented in the record, the facts are found to be few and simple.

Hartwell was cashier of the sub-treasury in Boston. He embezzled a large amount of money belonging to the United States, by lending it to Mellen, Ward, & Co. As the time for the examination of the funds in the sub-treasury approached, Mellen, Ward, & Co. endeavored to tide Hartwell over the crisis, and to conceal his guilt and their own by the devices out of which this controversy has arisen. They had sold to the Merchants' National Bank, of Boston, a large amount of gold certificates, with the understanding that they might buy back the like amount by paying what the bank had paid, and interest at the rate of six per cent per annum. Carter, one of the firm, arranged with Smith, the cashier of the State National Bank, of Boston, to buy from the Merchants' National Bank, of Boston, gold certificates to the amount of $420,000, and to pay for them with the checks of Mellen, Ward, & Co., certified to be good by Smith as such cashier, and then to deposit the certificates in the sub-treasury, where they were to remain until the ensuing day. A receipt was to be taken from the proper sub-treasury officer. The certificates were bought, paid for, and deposited accordingly. Hartwell received them from Smith in the presence of Carter, and made out the receipt to Mellen, Ward, & Co., or order. Smith inquired why the receipt was to them. Carter thereupon indorsed it by the firm name to Smith as cashier, and Smith took it without further remark.

Subsequently, pursuant to a like arrangement between the same parties, Smith, as such cashier, made a further purchase of gold and gold certificates from the Merchants' Bank, and converted the gold into gold certificates. The aggregate of the

certificates thus procured was $60,000. Thereafter Smith, as
such cashier, at the instance of Carter, made a further purchase
of gold certificates from another bank to the amount of $100,000.
All these certificates, amounting to $160,000, were also depos-
ited by Smith in the sub-treasury in the presence of Carter,
and a receipt taken and indorsed as before to Smith as cashier.
The receipts specified that the certificates deposited were " to
be exchanged for gold certificates or its equivalent, on demand."
Only $60,000 of the last deposit is claimed by the appellee.
The residue is not involved in this controversy. The total
claimed is $480,000. All these things occurred on the 28th of
February, 1867. On the following day, Smith presented the
receipts at the sub-treasury, and payment was refused. The
certificates were all cancelled, and sent to the proper officer at
Washington. The gold which they represented has since re-
mained in the treasury of the United States. Carter gave
Smith plausible reasons, not necessary to be repeated, for de-
siring to make the deposits. The Court of Claims found these
facts : " He (Carter) submitted his plan to Hartwell, which
was as follows : He proposed to buy gold certificates in New
York, bring them to Boston, and borrow money upon them of
the Merchants' Bank, and he then proposed to get Smith, the
cashier of the State Bank, to pay for these certificates, and leave
them with Hartwell during the examination. Hartwell made
no objection to this plan, but he thought Smith would not do
it. The plan was carried into effect by Carter, as hereinbefore
set forth ; but Hartwell had no agency in carrying it out, ex-
cept to receive the moneys and gold certificates paid to him on
the 28th of February, as aforesaid, and he had no actual knowl-
edge of the proceedings taken by Carter on that day to obtain
said gold certificates. When Carter and Smith deposited the
$420,000 of gold certificates in the sub-treasury, as aforesaid,
Smith did not know Hartwell, nor did Hartwell know Smith,
or know that Smith was connected with any bank or money
institution."

The case, under another aspect, was before us on a former
occasion. *Merchants' Bank* v. *State Bank*, 10 Wall. 604. We
there held, after the most careful consideration, that the legal
title to the certificates was, by the purchases made by its cashier,

vested in the State Bank. We find no reason to change this view. The finding of the court shows clearly that Hartwell knew when he received the certificates that they did not belong to Mellen, Ward, & Co., and that they did belong to the State Bank, represented by Smith as its agent. Hartwell was privy to the entire fraud from the beginning to the end, and was a participant in its consummation.

It is not denied that Smith acted in entire good faith. What he did was honestly done, and it was according to the settled and usual course of business. Hartwell was the agent of the United States. He was appointed by them, and acted for them. He did, so far as Smith knew, only what it was his duty to do, and what he did constantly for others, and it is not denied that it was according to the law of the land. 12 Stat. 711. Smith no more suspected fraud, and had no more reason to suspect it, than any other of the countless parties who dealt with the sub-treasury in like manner.

There could hardly be a stronger equity than that in favor of the plaintiff. It remains to consider the law of the case.

The interposition of equity is not necessary where a trust fund is perverted. The *cestui que trust* can follow it at law as far as it can be traced. *May* v. *Le Claire*, 11 Wall. 217; *Taylor et al.* v. *Plumer*, 3 Man. & Sel. 562.

Where a draft was remitted by a collecting agent to a sub-agent for collection, and the proceeds were applied by the sub-agent in payment of the indebtedness of the agent to himself, in ignorance of the rights of the principal, this court held that, there being no new advance made, and no new credit given by the sub-agent, the principal was entitled to recover against him. *Wilson & Co.* v. *Smith*, 3 How. 763. See also *Bank of the Metropolis* v. *The New England Bank*, 6 id. 212.

A party who, without right and with guilty knowledge, obtains money of the United States from a disbursing officer, becomes indebted to the United States, and they may recover the amount. An action will lie whenever the defendant has received money which is the property of the plaintiff, and which the defendant is obliged by natural justice and equity to refund. The form of the indebtedness or the mode in which it was incurred is immaterial. *Bayne et al., Trustees,* v. *United States* 93 U. S. 642.

The United States must use due diligence to charge the indorsers of a bill of exchange, and they are liable to damages if they allow one which they have accepted to go to protest. *United States* v. *Barker*, 12 Wheat. 560 ; *Bank of the United States* v. *The United States*, 2 How. 711 ; *The United States* v. *Bank of the Metropolis*, 15 Pet. 377.

In these cases, and many others that might be cited, the rules of law applicable to individuals were applied to the United States. Here the basis of the liability insisted upon is an implied contract by which they might well become bound in virtue of their corporate character. Their sovereignty is in no wise involved.

*Atlantic Bank* v. *The Merchants' Bank* (10 Gray (Mass.), 532) and *Skinner* v. *The Merchants' Bank* (4 Allen (Mass.), 290) are, in their facts, strikingly like the case before us, and they involved exactly the same point. It was held in each of those cases, after an elaborate examination of the subject, that the defrauded bank was entitled to recover.

But surely it ought to require neither argument nor authority to support the proposition, that, where the money or property of an innocent person has gone into the coffers of the nation by means of a fraud to which its agent was a party, such money or property cannot be held by the United States against the claim of the wronged and injured party.

The agent was agent for no such purpose. His doings were vitiated by the underlying dishonesty, and could confer no rights upon his principal.

The appellee recovered below the amount claimed. A different result here would be a reproach to our jurisprudence.

*Judgment affirmed.*

NOTE. — In *Merchants' Bank* v. *United States*, MR. JUSTICE SWAYNE, in delivering the opinion of the court, remarked, the opinion in *United States* v. *State Bank* (*supra*, p. 30) decides this case. *Judgment affirmed.*