Howry, J.,
delivered the opinion of the court:
This is a departmental case referred by the Secretary of the Treasury under the provisions of section 2 of the act of March 3, 1883 (22 Stat., 485). It presents for'determination the right of a second timber entryman of certain public land to recover from the Government the amounts paid him for his entry when, by decree of a court, title to the land has been divested out of him and invested in the assignee of the person first entering the land, under a purchase by the assignee' of the interest of the original entryman before cancellation of the certificate of original entry.
Timber entry for the land described in the findings was first made under an act of Congress entitled “An act for the sale of timber lands in the States of California, Oregon, Nevada, and in Washington Territory,” approved June 3, 1878 (1 Supp. Rev. Stat., sec. ed., 167), by one George W. Smith. The money paid into the Treasury by Smith for this entry was never returned to him, but remains there. In March, 1889, this entry was cancelled by the Commissioner of the General Land Office, whose action was confirmed by the Secretary of the Interior. February 26, 1892, plaintiff made timber entry of the same land, paying to the receiver the Government price, besides the fees, for which there was delivered to him a receipt, *18 Subsequently claimant surrendered this receipt and received a patent. Thereafter the Stimson Land Company, a corporation, filed a bill in equity in the United States circuit court for the northern division of the district of Washington to quiet title to the land and to have it declared that this plaintiff held a legal title in trust for the company by reason of its purchase of the land from the first entryman and an assignment by him to the company. The ground of complaint was the fraudulent nature of the proceedings by which Smith’s entry had been canceled, but no charge was made of any participation by plaintiff in the alleged fraud or in the cancellation proceedings. The cause coming on to be heard in March, 1896, the court found that the company was the equitable ovmer in fee of the land and should have the legal title; that the patent of the United States issued to the defendant (plaintiff here) was issued without authority of law, and that the title created by the patent was a cloud upon the title of the company, and that whatsoever title which may have accrued to plaintiff in this proceeding through his patent was held in trust for the use of the company. It ivas further decreed that the patentee should convey to the company whatsoever of title he majr have obtained under his patent, free and clear of encumbrance, and that the title of the company to the land be forever quieted as against plaintiff. For fear of imprisonment, the plaintiff complied with the terms of that decree bj^ executing and delivering the conveyance directed to be executed and delivered.
In October, 1896, plaintiff applied for payment of the purchase money and fees paid by him for his entry. With his application he filed the patent of the United States, copy of the decree of the court, quitclaim deed from himself to the United States for the tract of land in question, copy of his deed to the complainant in the equity proceedings, and a certificate to the effect that he had not transferred or incumbered title otherwise than by quitclaiming pursuant to the decree and then to the United States, as above stated. The Commissioner of the General Land Office allowed the claim and the Secretary of the Interior approved the allowance and transmitted the same to the Auditor for the Interior Department for payment. The Auditor returned the claim to the Secre *19 tary for reconsideration, who reaffirmed the allowance and again transmitted the claim to the Auditor. Thereupon the Auditor made a decision and submitted the same for approval, disapproval, or modification to the Comptroller of the Treasury. The Auditor’s opinion was that the claim could not be paid until the Commissioner of the Land Office cancelled the entry. This decision was approved by the Comptroller and the claim returned to the Secretary of the Interior for such further action as he might deem advisable. The Secretary of the Interior finally returned the claim to the Commissioner of the General Land Office with the statement that the Land Department had no further control or jurisdiction over the entry or the land in question, and that the Commissioner was without authority to cancel the entry, and that no further action must be taken in the matter. Subsequentty the Auditor made formal disposition of the claim by disallowing it, and upon claimant’s appeal to the Comptroller from this disallowance, and with the consent of claimant, the Secretary of the Treasury transmitted the claim to this court for adjudication.
For the plaintiff- it is contended that he has perfected his rights by complying with every requirement of the officers of the Government, and that the failure or refusal of the Secretary of the Interior to do his duty can not impair plaintiff’s right to have refunded to him the money paid for the entry now that by decree of a court of the United States plaintiff has lost his land.
For the Government the first contention is the correctness of the decision of the circuit court, it being denied, in the second place, assuming the decision to be correct, that the decree under the operation of which plaintiff lost the land is such a cancellation of his entry as to bring the case within the law providing for cancellation of entries.
The second section of the act of June 16, 1880 (21 Stat. L., 281), provides that in all cases where homestead or timber-culture or desert-land entries or other entries of public lands have heretofore or shall hereafter be cancelled for conflict, or where, from any cause, the entry has been erroneously allowed and can riot be confirmed, the Secretary of the Interior shall cause to be repaid to the person who made such entry, or to his heirs or assigns, the fees and commissions, amount of *20 purchase money, and excess paid upon the same upon the surrender of the duplicate receipt and the execution of a proper relinquishment of all claims to entered land whenever such entry shall have been duly cancelled by the Commissioner of the General Land Office. Under this statute the Comptroller of the Treasury held (4 Comp. Dec., 579) that a claim for the refundment of purchase money for land erroneously sold can not be allowed until the entry of the land shall have been duly canceled by the Commissioner of the General Land Office. The decision is thus made to rest upon cancellation by that officer alone and the established practice never to make repayment of purchase money for an entry which could not be confirmed until actual cancellation of the entry by the Commissioner.
If it be true that the lawful authority and right to make repayment to plaintiff does not exist, then we have the spectacle of the Government availing itself of the acts of its officers in cancelling a first entry and keeping the money paid for it, and yet, after selling the land to another entryman, of retaining the amount paid by the second party after it is made to appear that not only the title but the possession of the land has been lost to the second entryman by the order of another branch of the Government. Thus, because of conflict between executive and judicial authority — or, rather, the disregard of the effect of a judicial act by certain executive officers — -plaintiff must not only lose his land but his money, too, if the decision of the accounting officers be sustained.
The Government funds have been augmented by the double price of the land, and it is admitted that in equity and good conscience one of the payments “belongs to somebody,” presumably not to the Government. No application, however, seems to have been made by the first entryman for repayment either to himself or to his assignees. Under the rulings of the Land Office, a first entryman has been held not to be entitled to repayment where his entry has been declared fraudulent. Be this as it may, the first entryman of this land received an equivalent from his assignee, and no conflict arises or can arise between him and this claimant. Neither can there be a question between the assignee and the claimant, since the decree of the Circuit Court settled all controversy *21 between them. It would seem, then, that if anyone is entitled to the duplicate price of the land, claimant is that one. TTis claim would seem to be as meritorious as the right of one within the principle that assumpsit will lie wherever the defendant has received money which is the property of the plaintiff, and which the defendant is obliged by natural justice and equity to refund. (Bayne et al., trustees, v. United States, 93 U. S., 642; United States v. State Bank, 96 U. S., 35.)
But the United States were not parties to the decree which nullified the second entiy. For this reason, and because of the subsequent action of the officer having jurisdiction over conflicting and erroneous entries, we deem it unnecessary to consider the merits of the decree or the effect of it as a cancellation by operation of law. It is enough to say that the Commissioner of the General Land Office recognized the effect of the decree and made an award for the repayment to the claimant of the amounts paid by him for his entry. This award was approved by the Secretary of the Interior, and upon a reconsideration of the whole matter the decision of the Commissioner was reaffirmed by the Secretary. It is true that, upon the objection of the accounting officers, the action of the Commissioner in making the award and the approval thereof bjr the Commissioner’s superior officer was again and for the third time before the Secretary of the Interior; but nothing said or done in the final disposition of the matter (whatever may have been intended) actually displaced the award. In declining to take other or further action, the Secretary left the award where the Commissioner and his own action first placed it. The order for repayment was never rescinded.
The statute does not prescribe the particular reasons for cancellation in cases of conflicting entries, nor does it point out the form and manner of cancellation when in the exercise of his powers the officer charged with the duty of canceling entries directs a cancellation. Conflicting entries are subject to the action of the Commissioner whenever brought to his notice. Under the law, repayment or an award for repayment can only be made where the entiy has been cancelled. The Commissioner’s action here was a departmental recognition of a substantial cancellation of claimant’s entry and *22 .bis title under it. The award within itself was an actual cancellation.
While a formal order of cancellation might have been made by the Commissioner, the omission of a formal order should not defeat the manifest intent of the statute nor deprive the claimant of the just and equitable redress which the statute intended he should have.
The findings and opinion of the court will be transmitted to the proper Department, as provided by law. •