Booth, Judge,
delivered the opinion of the court:
This suit concerns a contract with the Post Office Department. The defendants interpose a plea of fraud. The con-contract in question obligated the plaintiff company to furnish and deliver letter carriers’ and collectors’ satchels to the department for a period of four years from July 1, 1902. It was made in response to an advertisement for proposals so to do issued during the preceding .month of May. A corn-committee of three disinterested and reputable gentlemen *100 duly commissioned recommended the award to plaintiff company, and no fraud is charged; most certainly none is proven in the inception of the contractual relations between the plaintiff company and the defendants. The infamous transactions as alleged which subsequently occurred were conceived by three men, one the vice president of plaintiff company, one a private citizen, and the other a then trusted employee of the Post Office Department. All of these men were subsequently indicted, and the vice president of the plaintiff company alone escaped judicial condemnation. The alleged scheme for defrauding the Government which was consummated imposed upon the vice president of the plaintiff company the duty of inducing his corporation to enter into an independent contract with one Lorenz, he to prepare and submit the bid of the company, and, if successful in securing the award, then in conjunction with the vice president as a representative of the plaintiff company, they were to negotiate the necessary contracts for the material for and the manufacture of said satchels and such contracts were to be made in the company’s name. The plaintiff company did not and never had manufactured satchels or dealt in the materials necessary so to do. The plaintiff company made in good faith the proposed agreement with Lorenz, by which he was to have all profit in the transaction in excess of 25 cents on each satchel, and faithfully executed the same until its terms were modified by a subsequent one. The plaintiff executed its contract with the Government, furnished without complaint to it all the satchels ordered by the department until the same was annulled in August, 1903, because of the fraudulent conduct of its vice president. The conspiracy to defraud the Government consisted of an oral agreement between Lorenz, the vice president of the company, one Crawford, and a Mr. Machen, then superintendent of the free delivery department of the Post Office Department. These three men, prior to the letting of the contract, agreed among themselves that in the event of the claimant securing the same, that Lorenz would divide among them all the sums of money he was to receive from the plaintiff company under his agreement with it. Lorenz and Crawford were to have one-fourth each and Machen the remaining one- *101 half, and this agreement was observed at least to the extent of Lorenz and Machen, for they have so admitted.
The satchels to be furnished under the contract were classified into three grades, “A,” “B,” and “C.” The “A” and “C” grades were to be provided with straps. Herein appears criminal vice. It was found impossible to secure the straps desired. The claimant company had previous to this modified its first contract with Lorenz by which it was to retain a larger share of profit than 25 cents on each satchel, and Lorenz agreed to furnish the necessary straps. Machen thereupon orders from one Lamb, a New York manufacturer, the necessary straps, they being a patented article and alone obtainable from him, and has the Government pay for them, duplicating this payment to plaintiff by paying it the full contract price as though it had furnished straps. It is not pretended that the plaintiff had actual knowledge of this or any other criminal transaction between its agent Lorenz and Machen. The plaintiff was wholly ignorant of Machen’s or Lorenz’s peculations as to straps, and honestly supposed it was discharging its contractual obligations in full. Payments were repeatedly made to the company, without complaint or deduction, and they in turn made repeated payments for straps to Lorenz, who at least divided with Machen. No part of the money paid for straps was retained by the plaintiff. This continued until the annulment of the contract, at which time the defendants had received satchels for which they have never paid. This suit is upon the contract to recover the contract price for the same, less the full amount paid by the defendants for straps.
We have set forth somewhat in extenso the facts of the case. The defendants relying upon a plea of fraud, which always challenges the close attention of the court, and as in this case it is more or less a question of fact we deem it wise to do so.
In order to involve the plaintiff in the admitted wrongdoing of others connected with it in the execution of the contract it must appear that they knew, either actually or constructively, of what was to be done and what was done. It is quite too apparent and requires only assertion to say that if the plaintiff company in anywise participated in the machi *102 nations of its agents in tbeir conspiracy with an officer of the Government to share to any extent in the profits of the company, it is now estopped to assert any claim for compensation under its contract.
The findings disclose the absolute want of any actual knowledge, participation with, interest in, or direction to any of its agents to do anything unlawful. If such knowledge is to be imputed the imputation must arise from inferences gleaned from the positive testimony in the record or be chargeable to it by law.
The conspiracy to defraud the Government, punishable under section 5440, Revised Statutes, while doubtless concocted previous to the letting of the contract, was peculiar in the respect that it did not contemplate deceit in the quality or price of the supplies to be furnished. No claim is made that the letting or terms of the contract as awarded were at all tainted. It was wholly a conception to lay illegal hands upon a portion of the legitimate profits of the contractor, and share the same with a Government officer charged with the administration of the contract. It is of course obvious that the administration of the contract under the supervision and control of a corrupt fiduciary of the Government was fraught with great possibilities as to graft; nevertheless, there is nothing in all these circumstances standing alone to exclude the idea of innocence upon the part of the contractor. Weighing against these circumstances, even if they were sufficient to indulge a suspicion of guilt, are the correlative transactions of the plaintiff company as distinct from the conduct of its agents. The record presents uncontradicted proof that no portion of the tainted money ever reached its exchequer; that it faithfully discharged its monetary obligations under its contract with Lorenz, and at no time retained, nor does it now possess, a single penny above its legitimate profits under the contract. Motive for the commission of crime is always a pertinent inqiiiry. Fraud is not usually practiced as a pastime; the participants contemplate an unjust accumulation and conceive methods to bring it about. The plaintiff not only does not profit by anything done by its agents, but, on the other hand, must be penalized to the extent of the payments corruptly made by Machen for the satchel straps, this money it *103 paid to Lorenz under an Lonest mistake that be was complying with his agreement with it to furnish the straps.
Defendants insist that the terms of the agreements between Lorenz and the plaintiff are in themselves so unusual as to excite suspicion. The insistence would be forcible indeed if the plaintiff had been and was then engaged in the manufacture of satchels and was fully informed upon every detail of the same. The business was, however, entirely new to it outside its usual occupation, and there is nothing to be implied from its engagement of Lorenz. Many contracts have been made by the Government with contractors not at the time engaged in the manufacture of the supply contracted to be furnished. The Government was alone concerned in getting the supply in accord with its specifications at the lowest responsible price. The contractor entered into bond to fulfilThis contract, and it would certainly he a somewhat violent presumption to attach guilt to a contractor because he may have been overreached by a subcontractor. It is a matter of little difficulty to view a (past) transaction which ultimately resulted in fraud, and after being in possession of all the details of the criminal offense, wonder why each one of the deceiving movements did not arouse our suspicion. The plaintiff had confidence in Crawford; he was its trusted agent, clothed with authority to solicit and contract for business; Lorenz was his discovery, and it was no more remarkable transaction for the plaintiff to adopt his suggestions and ratify his contract than it would be for any other corporation to do so. It is done repeatedly every day. It is certainly not to be presumed that the company retained in its employ an agent in whom it distrusted. The truth about the whole matter is that the company was the victim and suffered equally with the defendants.
This court in Garman v. United States, 34 C. Cls., 237, awarded judgment to an innocent subcontractor despite the positive proof that the original contractor had been guilty of attempted bribery of a Government official in securing the contract. The court in so doing used this language: "He performed the service, apparently, in good faith, and was not chargeable with notice of the corrupt and fraudulent practices which had secured it.”
*104 United, States v. State Bank, 96 U. S., 30, is one of a series of cases involving tbe fraud of agents, wherein Government and private funds were embezzled by agents of tbe parties. Tbe cases are quite too famibar to review. Tbe language of tbe opinion seems apropos: "Tbe agent was agent for no sucb purpose. His doings were vitiated by tbe underlying dishonesty, and could confer no rights upon his principal.”
Cyclopedia of Law and Procedure, vol. 10, p. 911: “Acts of manifest bad faith or breaches of duty toward tbe corporation on tbe part of its president are not binding upon it.”
It is useless to prolong tbe discussion, as it is tbe well-established rule that where an agent goes beyond tbe scope of bis authority and commits a wrong or fraud to accomplish a purpose designedly bis own, tbe principal is not bable.
There are some features of this case, however, clearly separable from tbe criminal transactions of tbe plaintiff company’s agents which preclude an assertion of lack of knowledge on its part of what was done by them. Acting within tbe scope of their conceded authority tbe agents did withhold actual information from tbe company which they should have communicated, but the company can claim no exemptions on this account, for it was business intrusted to their care, and which it had authorized them to do. The Government dealt with them on this basis, payments were made and received by them which the company received, and the relation of principal and agent clearly obtains. The company, as before observed, contracted with Lorenz to furnish satchel straps; of this contract the defendants had no knowledge and were not privy to the contract. The plaintiff’s contract expressly obligated it to furnish the straps, and it was its affair to see that the contract was faithfuhy executed in all respects. The defendants can not be charged with a default in performance due to the remissions of a duly authorized agent of the plaintiff’s, acting within the scope of his employment. The loss must fab upon the company. Machen did communicate the fact that the Government was paying for satchel straps to Crawford. This was a communication to the company, for Crawford was its agent for this and other purposes, and the defendants had a right to treat it as a communication to the company. The Government was under no obbgations to go further. The result, *105 therefore, is that the plaintiff company did not perform its contract, but committed a breach thereof, which is not cured by its offer to make restitution after the fact. The company never did at any time furnish more than the body of the satchels. This suit, it is true, is predicated upon the written contract. The allegations of the petition are confined strictly to such a cause of action; nevertheless, we believe it is within the province of the court to award judgment as upon a quantum meruit. Clark v. United States, 95 U. S., 539; Warded v. United States, 103 U. S., 651; Thomas v. Brownville, etc., R. R. Co., 109 U. S., 522. Defendants practically concede this authority, but contest the sufficiency of proof to sustain the value of the goods furnished. With this contention we agree. A careful examination of the whole record discloses a complete absence of any competent evidence upon which we might predicate such a judgment.
The plaintiff company is entitled to recover under its contract for satchels furnished and known as class “B.” These were to be furnished without straps and the contract in this respect was executed.
The court deducts from this judgment the overpayment made by defendants under the contract. This amount totals $3,949.61 for 9,999 satchel straps at 39J cents each, leaving a total balance due the plaintiff company of $123.63, for which amount judgment will be entered. It is so ordered.
Campbell, Chief Justice, concurs in the conclusion.