**Eric EISENBERG Plaintiff**

**v.**

**GRAND BANK FOR SAVINGS, FSB, Rick Lenoir and Jane Doe Defendants**

**No. CIV.A. 2:00CV263PG.**

United States District Court, S.D. Mississippi, Hattiesburg Division.

June 20, 2002.

Michael Adelman, Adelman & Steen, LLP, Hattiesburg, MS, F. Douglas Montague, III, Montague, Pittman & Varnado, Hattiesburg, MS, Richard J.J. Scarola, Jonathan A. Backman, Scarola, Reavis & Parent, New York, NY, for Eric Eisenberg, plaintiff.

John (Jack) W. Land, Francis McRae Turner, III, Katherine L. Howie, Bryan, Nelson, Randolph and Weathers, Hattiesburg, MS, for Grand Bank for Savings, FSB, defendant.

Jesse Ward Conville, J. Ward Conville, Hattiesburg, MS, Mary Moore Conville, Conville & Conville, PLLC, Hattiesburg, MS, for Rick Lenoir, defendant.

### *MEMORANDUM OPINION AND ORDER*

PICKERING, District Judge.

This matter is before the Court on Motion for Summary Judgment filed by the Defendant, Rick Lenoir, and on Cross–Motion for Summary Judgment filed by the Plaintiff, Eric Eisenberg. Defendant Grand Bank for Savings has previously been dismissed by separate order. The Court having reviewed the motions, the responses, the briefs of counsel, the authorities cited, the pleadings and exhibits on file and being otherwise fully advised in the premises finds as follows, to-wit:

*FACTUAL BACKGROUND*

It is undisputed that from 1995 through the year 2000, Douglas Walter Reid (Reid) misrepresented himself as an agent of The Bear Stearns Company and was soliciting investments pursuant to that misrepresentation. Beginning in 1996, Defendant Lenoir opened at least three supposed "Bear Stearns accounts" through Reid and made several hundred actual or purported stock trades using Reid as his broker. From 1996 through 2000, Defendant Lenoir made several withdrawals from and deposits to his "Bear Stearns accounts."

On or about November 20, 1999, Defendant Lenoir contacted Reid and requested a withdrawal from his "Bear Stearns accounts" in the amount of $415,000. Reid delivered the money via wire transfer to Grand Bank in Hattiesburg, Mississippi where it was deposited into Defendant Lenoir's account. Defendant Lenoir discontinued his use of Reid as a broker in April 2000 when he was contacted by the Federal Bureau of Investigation regarding a fraud investigation of Reid.

It is also undisputed that the Plaintiff, Eric Eisenberg, deposited one million dollars for investment purposes with Douglas Reid on or about November 15, 1999, into an account entitled "Douglas Reid d/b/a Bear Stearns" at Wachovia Bank in Charlotte, North Carolina. Prior to Eisenberg's deposit, this account contained only a minuscule amount of money. Apparently Reid had induced Eisenberg to invest the funds with him on a promise of an extraordinary rate of return. Within a week of the transfer by Eisenberg, Reid transferred the $415,000 from this same account to Lenoir. After Eisenberg's deposit, no other deposits or withdrawals were made to the account prior to the $415,000 payment to Lenoir. Reid has subsequently pled guilty and is serving time in a federal prison on convictions of money laundering and wire fraud.

Lenoir's Motion contends that he also is a victim of Douglas Reid and is still owed substantial monies by Reid. He contends that he is a party to an arbitration proceeding seeking recovery of funds from The Bear Stearns Company because of Reid's misrepresentations and that he has been contacted by the U.S. Attorney's Office in North Carolina concerning his possible entitlement to restitution from Reid. He further asserts that he had no knowledge of nor any relationship with Eisenberg that would create any liability on his part for the matters complained of by Eisenberg and thus there is no genuine issue of material fact that would prevent summary judgment in his favor. Nothing in the record disputes Lenoir's contention that he is a victim of Reid.

Eisenberg in his Cross–Motion for Summary Judgment asserts various grounds in support of his contention that he is entitled to a judgment against Lenoir in the sum of $415,000. He contends that Lenoir is not a victim and was not entitled to the

$415,000. Eisenberg contends that Lenoir had less than $40,000 in accounts with Reid in November 1999 and should have had no expectation of receiving his requested withdrawal of $415,000. In support of his Cross–Motion for Summary Judgment, Eisenberg has asserted various equitable principles including unjust enrichment, constructive trust, and that no title can be acquired in stolen property.

*STANDARD OF REVIEW*

The Federal Rules of Civil Procedure, Rule 56(c) authorizes summary judgment where "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corporation v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The existence of a material question of fact is itself a question of law that the district court is bound to consider before granting summary judgment. *John v. State of La. (Bd. of T. for State C. & U.)*, 757 F.2d 698, 712 (5th Cir.1985).

A Judge's function at the summary judgment stage is not himself to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Although Rule 56 is peculiarly adapted to the disposition of legal questions, it is not limited to that role. *Professional Managers, Inc. v. Fawer, Brian, Hardy & Zatzkis*, 799 F.2d 218, 222 (5th Cir.1986). "The mere existence of a disputed factual issue, therefore, does not foreclose summary judgment. The dispute must be genuine, and the facts must be material." *Id.* "With regard to 'materiality', only those disputes over facts that might affect the outcome of the lawsuit under the governing substantive law will preclude summary judgment." *Phillips Oil Company v. OKC Corporation*, 812 F.2d 265, 272 (5th Cir.1987). Where "the summary judgment evidence establishes that one of the essential elements of the plaintiff's cause of action does not exist as a matter of law, ... all other contested issues of fact are rendered immaterial. *See Celotex*, 477 U.S. at 323, 106 S.Ct at 2552." *Topalian v. Ehrman*, 954 F.2d 1125, 1138 (5th Cir.1992).

In making its determinations of fact on a motion for summary judgment, the Court must view the evidence submitted by the parties in a light most favorable to the non-moving party. *McPherson v. Rankin*, 736 F.2d 175, 178 (5th Cir.1984).

The moving party has the duty to demonstrate the lack of a genuine issue of material fact and the appropriateness of judgment as a matter of law to prevail on his motion. *Union Planters Nat. Leasing v. Woods*, 687 F.2d 117 (5th Cir.1982). The movant accomplishes this by informing the court of the basis of its motion, and by identifying portions of the record which highlight the absence of genuine factual issues. *Topalian*, 954 F.2d at 1131.

"Rule 56 contemplates a shifting burden: the nonmovant is under no obligation to respond unless the movant discharges [its] initial burden of demonstrating [entitlement to summary judgment]." *John*, 757 F.2d at 708. "Summary judgment cannot be supported solely on the ground that [plaintiff] failed to respond to defendants' motion for summary judgment," even in light of a Local Rule of the court mandating such for failure to respond to an opposed motion. *Id.* at 709.

However, once a properly supported motion for summary judgment is presented, the nonmoving party must rebut with "significant probative" evidence. *Ferguson v. National Broadcasting Co., Inc.*, 584 F.2d 111, 114 (5th Cir.1978). In other words, "the nonmoving litigant is required to bring forward 'significant probative evidence' demonstrating the existence of a triable issue of fact." *In Re Municipal Bond Reporting Antitrust Lit.*, 672 F.2d 436, 440 (5th Cir.1982). To defend against a proper summary judgment motion, one may not rely on mere denial of material facts nor on unsworn allegations in the pleadings or arguments and assertions in briefs or legal memoranda. The nonmoving party's response, by affidavit or otherwise, must set forth specific facts showing that there is a genuine issue for trial. Rule 56(e), Fed.R.Civ.P. *See also, Union Planters Nat. Leasing v. Woods*, 687 F.2d at 119.

While generally "[t]he burden to discover a genuine issue of fact is not on [the] court," (*Topalian* 954 F.2d at 1137), "Rule 56 does not distinguish between documents merely filed and those singled out by counsel for special attention-the court must consider both before granting a summary judgment." *John*, 757 F.2d at 712, *quoting Keiser v. Coliseum Properties, Inc.*, 614 F.2d 406, 410 (5th Cir.1980).

*APPLICABLE LAW*

In this diversity case, the Court is *Erie* bound to follow Mississippi substantive law. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). If this Court determines that neither the Mississippi Supreme Court nor the Fifth Circuit have ruled on the issues presented by this case under Mississippi substantive law, then this Court is required to decide as best it can what this Court thinks the Mississippi Supreme Court would do if it was presented with these issues. The Court is not to decide the case as this Court, or any other federal court, would decide the case, but as the Court determines the Mississippi Supreme Court would decide the case. *Jackson v. Johns–Manville Sales Corp.*, 781 F.2d 394, 397 (5th Cir.) (*en banc*), *cert. denied*, 478 U.S. 1022, 106 S.Ct. 3339, 92 L.Ed.2d 743 (1986)("[The Court] emphatically [is] not permitted to do merely what we think best; we must do that which we think the Mississippi Supreme Court would deem best.")

*ARGUMENTS*

Eisenberg first argues that Lenoir can make no legal or equitable claim for keeping the funds which without dispute were stolen from Eisenberg. To substantiate his argument Eisenberg subpoenaed and received account statements for Defendant Lenoir from Corporate Securities Group (a company apparently owned or controlled by Reid) concerning all of Lenoir's accounts for which Reid acted as Lenoir's stockbroker. Eisenberg points out that Lenoir's combined account balances were less than $40,000 in November 1999 when Lenoir requested and received the $415,000 payment from Reid. Those documents reflect that Lenoir had four accounts with a total balance of $36,348 on October 29, 1999. Those accounts had a balance of $17,191 on November 26, 1999. During that time period, there were no deposits to these accounts to reflect a sufficient amount to cover the payment of the $415,000 wired from Reid to Lenoir on or about November 20, 1999.

In support of his equity and constructive trust theories, Eisenberg argues that Lenoir was well aware of his low account balances or should have been. Reid or Corporate Securities Group (CSG) was sending monthly statements at one time to Lenoir regarding his accounts and was set up to continue doing this throughout the parties' relationship. However, Lenoir

testified at his deposition that he had previously informed Reid that he did not want to be inundated with paperwork regarding his stock transactions. He testified that he had previously told Reid that when he wanted to know what activities were occurring in his accounts, he would request a statement. At such time Reid would fax him a statement of his account showing the balances. Lenoir controlled his stock purchase transactions and testified that he considers himself a "sophisticated investor" as that term is used in investment securities law. He did, however, testify that his account statements showed transactions from time. to time that he apparently had not authorized and that he had confronted Reid about these. Lenoir identified only three such trades. These problems were apparently resolved as Lenoir continued using Reid.

Lenoir testified that a statement he reviewed in March 1999 showed that his total account balances were in excess of $1,000,000. This is the last statement as to his account balances he remembered looking at prior to the November 1999 withdrawal. Eisenberg argues that because Lenoir made the affirmative decision not to review his monthly account statements or the other account information regularly sent to him by Reid/CSG and or Bear Stearns, or at least that he was entitled to receive but for his request otherwise, he should be legally and equitably estopped from asserting a claim to the $415,000. There is no assertion by Eisenberg that Lenoir was a participant in the fraud scam perpetrated by Reid or that he had any knowledge that Reid had misrepresented himself prior to the April 2000 visit from the FBI.

Lenoir challenges each of Eisenberg's arguments. He argues that since he is an innocent victim and a bona fide purchaser for value, and since money was involved and has been co-mingled with other funds,

he is entitled to summary judgment and Eisenberg is not. Both parties agree that this is an appropriate case for summary decision.

The Court will now consider the issues raised by the parties.

## I. CONSTRUCTIVE TRUST

The Mississippi Supreme Court has stated that "a constructive trust is a fiction of equity created for the purpose of preventing unjust enrichment by one who holds legal title to property which, under principles of justice and fairness, rightfully belongs to another." *McNeil v. Hester*, 753 So.2d 1057, 1064 (2000). (*citing Allgood v. Allgood*, 473 So.2d 416 (Miss.1985) and *Russell v. Douglas*, 243 Miss. 497, 138 So.2d 730 (1962)). Further,

> A constructive trust is one that arises by operation of law against one who, by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity and good conscience, either has obtained or holds a legal right to property which he ought not, in equity and good conscience, hold and enjoy. *Id.* (other citations omitted).

The Mississippi Supreme Court has generally required that a confidential relationship be present and abuse of that confidence in order to impose a constructive trust. *Id. See also, Davidson v. Davidson*, 667 So.2d 616 (Miss.1995). The Court has further held that "such a trust arises by implication from the relationship and conduct of the parties ...." *Allgood v. Allgood*, 473 So.2d 416, 421 (Miss.1985) (other citations omitted). Further, substantial overreaching or fraud must be shown. *Id.* (*quoting Pitchford v. Howard*, 208 Miss. 567, 583, 45 So.2d 142, 147 (1950)). It is also clear that "proof of facts relied on to establish a constructive or resulting trust

must be clear and convincing." *Sojourner v. Sojourner,* 247 Miss. 342, 153 So.2d 803, 808 (1963)(*citing Conner v. Conner,* 238 Miss. 471, 119 So.2d 240 (1960)).

█ Plaintiff Eisenberg has quoted numerous authorities from other jurisdictions in support of his constructive trust argument. However, a careful review of Mississippi case law convinces the Court that the question of whether a constructive trust was created in this case must be answered in the negative. The testimony is clear that Lenoir had never heard of Eisenberg nor Eisenberg of Lenoir until institution of this litigation. There was no confidential nor fiduciary relationship between Lenoir and Eisenberg. While it is true that a review of Lenoir's accounts indicates that he might not have been entitled to the payment of $415,000, Eisenberg may not recover that money from Lenoir on the basis of a constructive trust. There simply was no confidential relationship or abuse of that relationship which would allow the imposition of a constructive trust under Mississippi law as argued for by Eisenberg.

## II.  UNJUST ENRICHMENT, TITLE TO STOLEN PROPERTY, AND BONA FIDE PURCHASER FOR VALUE

The issues relating to unjust enrichment, title to stolen property, and bona fide purchaser for value as they relate to the facts of this case, present a case of first impression under Mississippi law. In fact, the parties have not cited any case from any jurisdiction dealing with the precise issues presented to this Court. This Court has likewise been unable to find any case directly on point either in Mississippi or in any other jurisdiction.

The Court finds that there is no genuine issue of material fact as to the following:

1. Plaintiff Eisenberg deposited $1,000,000 with Reid.

2. Reid defrauded Plaintiff Eisenberg of the $1,000,000.

3. The $1,000,000 transferred by Eisenberg to Reid was deposited in a bank account. Less than seven days later, Reid transferred $415,000 from that same account to Lenoir. The $415,000 transfer to Lenoir could have come from no source other than the funds transferred by Plaintiff Eisenberg to Reid, which were then stolen by Reid.

4. The proceeds from Eisenberg's stolen money were easily and clearly traceable directly to Lenoir.

5. At the time Lenoir received the $415,000 transfer from Reid, Lenoir had less than $40,000 on deposit in his four accounts with Reid which had been placed with Bear Stearns.

Eisenberg argues that *Stephenson v. Paine Webber Jackson & Curtis, Inc.,* 839 F.2d 1095 (5th Cir.1988), should be applied in this case to preclude Lenoir from claiming that Reid owed Lenoir any sum in excess of $40,000. In that case, the Fifth Circuit held that a sophisticated investor who ignored and failed to review accurate account statements over a long period of time was guilty of more than mere negligence and was reckless to the point that he could not pursue a claim against his broker and/or brokerage firm for inappropriately investing his funds.

Lenoir testified that he received a statement from Reid in March of 1999 showing that his account balances were in excess of $1,000,000. Lenoir did acknowledge that he told Reid not to send him regular statements, that he would tell him what information he wanted. Thus, some of the same factors that were relied upon by the Fifth Circuit in *Stephenson* are present in this case. However, *Stephenson* cannot be applied *in toto* because there is no evidence before the Court that the state-

ments provided to Lenoir by Reid were accurate as was true in the *Stephenson* case. If that issue was going to trial, it could be that a jury would find that *Stephenson* applied, but this Court cannot make such a determination on a motion for summary judgment. There are genuine issues of material fact as to the applicability of *Stephenson.*

Under the evidence before the Court on these motions for summary judgment, Lenoir had a liquidated claim against Reid for less than $40,000, however, it may be that Lenoir had a claim against Reid for fraud that exceeded $415,000. So consequently, on motion for summary judgment, this Court cannot determine that there is no genuine issue of material fact as to whether Reid owed Lenoir less than $40,000, $415,000, or more. Accordingly, for purposes of this opinion, the Court assumes that both Eisenberg and Lenoir were innocent victims of Reid's fraud. That makes this case an extremely close call.

The most analogous case this Court has found is a case that was decided by the Sixth Circuit, *Stone & Webster Engineering Corp. v. Hamilton Nat. Bank,* 199 F.2d 127 (6th Cir.1952). In that case, an employee of Stone & Webster embezzled from his employer. He stole $5,000 from the Hamilton National Bank and placed it in his employer's coffers in an effort to cover up the shortage caused by his embezzlement from his employer. The bank sued Stone & Webster. The trial court entered a judgment for the bank and the employer appealed, arguing that money is negotiable in character, that Stone & Webster became a holder in due course, in good faith, and for value, and without notice of any defect in the title of the thief. They further argued that the money was co-mingled with the general assets of the corporation so as to be indistinguishable, and as a consequence the bank was not

entitled to recover. These are basically the same arguments advanced by Lenoir in this case. The Sixth Circuit concluded that

> We agree with the finding of the trial judge that Stone & Webster did not receive the money involved "in the course of trade"; that it gave nothing for the money, merely making book entries; and that it surrendered no evidence of debt against its employee and impaired its position in no particular. The opinion in *United States v. State National Bank of Boston,* 96 U.S. 30, 35, 36, 6 Otto 30, 24 L.Ed. 647, is considered in point. There the court said "an action will lie whenever the defendant has received money which is the property of the plaintiff, and which the defendant is obligated by natural justice and equity to refund. The form of indebtedness or the mode in which it is incurred is immaterial. (citation omitted)."

199 F.2d at 130. The Court went on to hold that

> True, the weight of authority is to the effect that it is sufficient for the receiver of stolen money to act in good faith and without notice of its tainted character. But he *must also have parted with the valuable consideration* therefor; ....

*Id.* at 131 (citation omitted) (emphasis added).

The Sixth Circuit clearly held that one who receives money from a thief in satisfaction of a pre-existing debt does not have a defense against the person from whom the money was stolen. The Court recognizes that since the thief was an employee of Stone & Webster, the Sixth Circuit also concluded that Stone & Webster could not benefit from theft by their agent. This second basis for the Sixth Circuit's ruling does not detract from its clear holding as to stolen money.

The Mississippi Supreme Court has recognized that an unjust enrichment occurs when one "is in possession of money or property which in good conscience and justice he should not retain but should deliver to another." *Hans v. Hans*, 482 So.2d 1117, 1122 (Miss.1986)(*quoting* 66 Am. Jur.2d *Restitution and Implied Contracts*, § 11 (1973)). In view of the undisputed facts before the Court, this appears to be a case for invocation of that doctrine.

In the case of *Newman v. Stuart*, 597 So.2d 609, 613, 614 (Miss.1992), the Mississippi Supreme Court ruled:

> In this state, as in most states, the law is that neither the thief of stolen property nor his transferees can convey any title or property right to such property. A bona fide purchaser of stolen property acquires no title or interest therein.

Under this principle, Reid could not have conveyed and Lenoir could not have received any title or interest in the money stolen from Eisenberg. In *United States v. State Bank*, 96 U.S. 30, 6 Otto 30, 24 L.Ed. 647 (1877), the Supreme Court was considering a case involving embezzlement where the fruits of the embezzlement could be easily traced. The Supreme Court then considered applicable law, as contrasted with equity, and stated "The interposition of equity is not necessary where a trust fund is perverted. The *cestui que* trust can follow it at law as far as it can be traced." (citation omitted). 96 U.S. at 34, 6 Otto 30. That case involved United States gold certificates. The holding was that if illegally gotten gain can be traced, it can be recovered.

This Court recognizes that money is specifically excluded as a negotiable instrument under Article 3 of Mississippi's version of the Uniform Commercial Code. This Court is also aware that stolen money is not treated under the law the same as titled or non-titled vehicles, equipment, appliances and other such items of personal property. But in this case, the proceeds from Eisenberg's stolen money were easily and clearly traceable directly to Lenoir.

■ Under well-established Mississippi law, even before the UCC was adopted, a bona fide purchaser for value must have departed with some valuable consideration to be entitled to invoke the legal protection provided by that status. *See Hinds v. Pugh*, 48 Miss. 268 (1873); *Upshaw v. Hargrove*, 14 Miss. 286 (1846); and *Stone & Webster Engineering Corp. v. Hamilton Nat. Bank*, 199 F.2d 127 (6th Cir.1952). Lenoir has not offered any evidence that he parted with anything of value for the $415,000. Neither his liquidated nor his unliquidated claims were extinguished. Whatever cause of action he had against Reid still existed. The fact that Reid owed Lenoir a pre-existing debt, and the $415,000 payment was received by Lenoir as payment of all or a part of such preexisting debt, does not make Lenoir a bona fide purchaser for value. As the Court in *Stone & Webster* concluded "it surrendered no evidence of debt against its employee and impaired its position in no particular."

■ Even though it is a close question, Plaintiff Eisenberg is entitled to recover a judgment from Defendant Lenoir. The Court reaches this conclusion based upon the fact that the $415,000 received by Lenoir from Reid came directly from Eisenberg's funds and that Lenoir departed with nothing of value. He had a pre-existing liquidated claim against Reid for something less than $40,000 and he *may have had* a pre-existing unliquidated claim against Lenoir in excess of $415,000. He maintained the same claims against Lenoir, if he is not entitled to keep the $415,000, as before.

Equity demands a just result. If the money in this case was not so clearly traceable, or if Lenoir had parted with

something of value, the result probably would be different. Whether under a theory of unjust enrichment, a stolen property analysis, or a purchaser for value analysis, Lenoir cannot claim a windfall from Eisenberg's loss when the putrid trail of the stolen money is so clearly marked and Lenoir has parted with nothing of value.

Based on the foregoing, the Court finds that Plaintiff Eisenberg is entitled to summary judgment and that Defendant Lenoir is not. The Court further finds that Eisenberg is entitled to a judgment against Lenoir for an amount not to exceed $415,000, provided Eisenberg may not recover more than $1,000,000 from any source, including Lenoir, by way of restitution, or otherwise, relating to Eisenberg's depositing the $1,000,000 in question with Reid. Deducting such recovery, if any, will prevent Eisenberg from making a double recovery and himself becoming unjustly enriched.

IT IS, THEREFORE, ORDERED AND ADJUDGED that the Plaintiff Eisenberg's Cross–Motion for Summary Judgment on the issue of liability is granted, and Defendant Lenoir's Motion for Summary Judgment is denied.

IT IS FURTHER ORDERED AND ADJUDGED that the parties shall attempt to resolve among themselves the amount of money that Eisenberg has already recovered or is likely to recover as a result of Reid's fraud in regard to the $1,000,000. If the parties cannot agree, they will both submit such evidence as they have available so that the Court can determine whether it can ascertain on Eisenberg's Motion for Summary Judgment the amount which Eisenberg has or is likely to recover, or whether it will be necessary to conduct a trial on that issue. The parties are to report to the Court within twenty (20) days of this Order such agreement or provide to the Court such information as each party wishes the Court

to consider on this issue so that a final judgment may be entered in accordance with Rule 58, Federal Rule of Civil Procedure or so that this issue can be scheduled for trial.