KENTUCKY MARINE AND FIRE INSURANCE CO. *v.* THE WESTERN AND ATLANTIC RAILROAD CO., AND NASHVILLE AND CHATTANOOGA RAILROAD CO.

CONSTRUCTIVE DELIVERY. *Common carriers.* R., G. & Co. shipped a certain number of bales of cotton to a consignor at Louisville over the lines of the W. & A. R. R. Co. and the N. & C. R. R. Co. The cotton was insured by the complainant, and was destroyed by fire at Chattanooga while in the possession of one or other of the railroads. The Insurance Company paid the loss, and seeks a recovery against them by way of subrogation to the rights of the owner. The right of the Insurance Company to a recovery being clear as to one or the other, the question was, which should bear the loss. The facts are, that the cotton was delivered to the W. & A. R. R., which brought it to Chattanooga on open cars, and there placed it on a side track known as the Y, which was the property of the N. & C. Railroad, but which was used by all the railroads running into Chattanooga. While on the Y it was burned. The W. & A. R. R. insisted that the placing the cotton on the Y was a delivery, and adduced proof tending to show that in practice this was a delivery; whereas, the N. & C. R. R. claimed that it was not a delivery, and furnished proof tending to show that among the roads using the Y delivery was not regarded as made until the car containing the freight was hauled to the transfer platform of the receiving road, and the freight examined and checked off by the bill of lading, and received by the clerk of the receiving company: *Held*, that the proof preponderated in favor of the latter view, and that there had, in fact, been no delivery to the N. & C. R. R., and that the W. & A. R. R. was liable.

---

FROM HAMILTON.

---

Appeal from the Chancery Court. D. C. TREWHITT, Chancellor.

BAXTER, CHAMPION, and RICKS for complainant.

TOMLINSON FORT, KEY, EAKIN & KEY for defendants.

NICHOLSON, C. J., delivered the opinion of the court.

In October, 1865, Rogers, Garrett & Co., at Macon, Georgia, shipped two hundred and fifty-five bales of cotton to Hall & Long, as consignees, at Louisville, Kentucky, which cotton was insured for the consignors in the office of the Kentucky Marine and Fire Insurance Company, at $2.50 a bale.   Forty-one bales of the cotton were never delivered to Hall & Long, who thereupon received from the Insurance Company the amount insured on the forty-one bales, and paid the sum over to Rogers, Garrett & Co.

The Insurance Company, claiming the right of subrogation to the owners of the cotton, file this bill against the W. & A. R. R. Co. and the N. & C. R. R. Co., which two roads had undertaken to carry the cotton to Louisville, charging that the forty-one bales were destroyed by fire while at Chattanooga, in the joint possession and by the joint negligence of the two companies.

The chancellor held that the cotton was destroyed while in the possession of the W. & A. R. R. Co., and before it had been delivered to the N. & C. R. R. Co., and, therefore, that the former company was responsible for the loss, and decreed accordingly.

The proof is satisfactory as to the shipping of the cotton by Rogers, Garrett & Co. upon the two railroads sued, and as to the failure of Hall & Long to receive forty-one bales, and as to their collection of

the amount insured thereon, and its payment to Rogers, Garrett & Co.

There is no controversy as to the fact that the two hundred and fifty-five bales were carried to Chattanooga by the W. & A. R. R. Co., reaching their depot on the evening of the 24th of October, 1865, and as to the cars carrying the cotton having been placed, on the morning of the 25th of October, 1865, on the railroad track known as the Y, and there left, and as to the fact that after having been so left, forty-one bales of the cotton, at the end of about three hours, were destroyed by fire. The fact that the forty-one bales were not delivered to the consignees, at Louisville, Ky., fixed the liability of the Insurance Company, without any regard to when or where they were lost. They so considered their undertaking, and accordingly paid the loss, in accordance with this contract. But when they come to enforce their right to be reimbursed by subrogation, the question becomes material to ascertain which of the companies that undertook to transport the cotton is responsible for the loss.

We have already stated that the loss occurred by fire while the cotton was in the cars of the W. & A. Co., standing on the track Y, at Chattanooga. The first question is, was the placing of the cars on that track a delivering of the cotton to the Nashville and Chattanooga Company? On this question there is much conflict in the testimony—not so much in the facts, as in the opinions of the several witnesses—as to what constitutes a delivery. The Y belongs to

the Nashville and Chattanooga Company, but it was constructed for the common use of all the railroads terminating at Chattanooga, in transferring freight from the cars of one to another, and in turning the engines of the several roads. The fact that the Y is built on the ground of the N. & C. Co. is of no significance, since it is the connecting link between all the roads, and is freely used by all.

It is said by one class of witnesses that whenever a freight car is placed on the Y, with freight to be forwarded by either of the other roads, the delivery of the freight to such forwarding road is complete, and that such has been the custom recognized among the several roads.

On the other hand, another class of witnesses state that there was no such custom as to the placing of freight on the Y being a delivery, but they state that untill the car containing the freight was hauled to the transfer platform of the receiving road, and the freight examined and checked off by the bill of lading, and received by the clerk of the receiving company, there was no delivery.

We regard this proof as conclusive on the question of delivery; and as it is shown that the forty-one bales were burnt while on the cars of the W. & A. Co., and without any notice that the cars were on the Y, and ready for delivery to the N. & C. Co., we are forced to the conclusion that there had been no delivery of the cotton when it was burnt. We are, therefore, of opinion that the cotton was not in the joint possession of the two companies when it was

described, but in possession of the W. & A. Company only.

It is insisted, however, that the cotton was lost in consequence of the tort, or gross negligence of the N. & C. Co., and, therefore, that it ought to be made liable for the loss to the W. & A. Co.

It is in proof that the cotton was brought from Atlanta, Ga., on two open, flat cars, unprotected by any covering. It reached the depot of the W. & A. Co. in the evening, and remained there until morning, when it was removed and placed in this exposed condition on the Y track; parallel to which, and within four or five feet from it, was the regular track of the N. & C. Co., along which freight cars were regularly running. After the cars so loaded with the cotton were left on the Y, a heavily laden freight train of the N. & C. Co. passed by, from which it is probable, but by no means certain, that the cotton was fired by sparks from the passing locomotive. It is said that it was an act of gross negligence in the manager of the freight train to pass by the unprotected cotton, without taking the necessary precautions to prevent the setting the cotton on fire, by sparks from its locomotive. There is no direct evidence that any sparks were emitted, or that reasonable precautions were not taken. It is only rendered probable that the burning was the result of a failure to take such precautions, because no other more reasonable explanation of the burning is shown. But if the proof was satisfactory as to the negligence in the running of the freight train, the N. & C. Co. insist that the respon-

sibility still attaches to the W. & A. Co., for the reason that it was gross negligence in that company to leave the cotton on a flat car entirely uncovered, in a place exposed to danger from passing trains, and failing, for three hours, to notify the N. & C. Co. that the cotton was ready for delivery, as it was its duty to do, and, therefore, that the loss was the result of the contributory negligence of the W. & A. R. R. Co.

We think the proof sustains this view of the case, and makes a state of facts to which the doctrine of contributory negligence is applicable.

The Chancellor arrived at the same conclusions, and we think he is sustained by the proof. His decree is, therefore, affirmed, with costs.