### In re UNITED STATES HAIR CO.

(Circuit Court of Appeals, Second Circuit.   January 9, 1917.)

#### No. 111.

1. BILLS AND NOTES &⇒359—BONA FIDE PURCHASER—CONSIDERATION—PAYMENT OF EXISTING INDEBTEDNESS.

The payment of an existing indebtedness from a firm to a corporation is valuable consideration for the transfer to the corporation of a check payable to the firm.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 924–936.]

2. BILLS AND NOTES &⇒359—BONA FIDE PURCHASER—CONSIDERATION—PAYMENT OF EXISTING INDEBTEDNESS—PRESUMPTION.

Where a firm indorsed a check payable to a corporation to which it was indebted, and there is no evidence as to the purpose of such transfer, it will be presumed to have been a payment of the existing debt, since the law does not presume a gift or a fraudulent purpose.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 924–936.]

3. CORPORATIONS &⇒428(12)—NOTICE—KNOWLEDGE OF AGENT—FRAUD.

Where the president of a corporation, engaged in a fraudulent scheme to convert the corporation's assets to his own use, obtained a check from another by false representations and indorsed it to the corporation, his interest in concealing the fraud by which he obtained the check rebuts the presumption that he informed the corporation of the facts, as it was his duty to do, so that his knowledge of the fraud is not imputed to the corporation.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1761.]

&⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

4. BANKRUPTCY ⊕⊶318(3)—CLAIMS—MONEY RECEIVED—BONA FIDE PURCHAS-
      ER OF CHECK.
      A claim against a bankrupt for money received cannot be based on a
   check secured from claimant by fraud and indorsed to the bankrupt, who
   was a bona fide purchaser for value, without notice.
      [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 481.]

Petition to Revise Order of the District Court of the United States
for the Southern District of New York.

In the matter of the United States Hair Company, bankrupt. Peti-
tion by J. & W. Seligman & Co. to revise an order of the District
Court disallowing the claim of petitioners as alleged creditors of the
bankrupt. Order affirmed.

The bankrupt is a New York corporation of which one P. M. Musica was
president during the occurrences giving rise to this litigation. He was also a
partner in the firm of A. Musica & Son, which firm and its several members
are likewise adjudicated bankrupts. Musica & Son had long been in business.
In January, 1913, P. M. Musica organized the Hair Company, in pursuance of
a fraudulent scheme of his own, having for its object the assumption of all
the debts of Musica & Son by the corporation, and the ultimate conversion to
his own use of such assets as said corporation might possess. The business
of both firm and corporation was dealing in human hair.

On March 8, 1913, the Hair Company was a creditor of Musica & Son to an
amount exceeding $17,000. On or before said date P. M. Musica had fraudu-
lently converted to his own·use upwards of $50,000 belonging to the Hair Com-
pany; but no other officer or director of the Hair Company was aware of this
embezzlement, nor were they, nor any of them, cognizant of Musica's fraudu-
lent purpose in organizing that corporation. On March 11, 1913, P. M. Musica
caused a draft on London to be drawn by Musica & Son, which draft he sold
to Seligman & Co. inducing said sale by false and fraudulent representations
relied upon· by Seligman & Co., who consequently bought the draft for
$16,793.33, for which amount they gave P. M. Musica their own check to the
order of Musica & Son. This check P. M. Musica, as a partner in Musica·&
Son, indorsed to the order of the Hair Company, delivered the same to that
corporation, and thereupon, as president of the Hair Company, again indorsed
it, and caused its deposit in the bank account of that corporation.

Shortly thereafter Musica's frauds were discovered, the draft on London was
returned unpaid, Musica became a fugitive from justice, and both his firm and
the Hair Company became bankrupt. There is no evidence produced, and none
probably producible, as, to the purpose or intent of P. M. Musica in regard
to ·these transactions, except that hereinabove summarized. Seligman & Co.
filed claim in the Hair Company proceedings, as for money had and received
by the bankrupt. Such claim was disallowed by the referee and the District
Court. To the expunging order this petition was filed.

Seligman & Seligman, of New York City (George W. Seligman, of
New York City, of counsel), for petitioners.

Parker & Aaron, of New York City (Henry Root Stern and Rush-
more, Bisbee & Stern, all of New York City, of counsel), for B. W.
Brown, trustee in bankruptcy.

Before COXE, WARD, and HOUGH, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). Much
argument has been devoted to matters considered by us unnecessary
to decision; it being our opinion that this case lies within narrow
limits.

[1] The existing indebtedness (irrespective of that caused by P. M. Musica's embezzlement) of Musica & Son to the Hair Company constituted a valuable consideration for the transfer of Seligman & Co.'s check to the bankrupt. In Holly v. Domestic, etc., Missionary Society, 92 Fed. 747, 34 C. C. A. 651, Wallace, J., thus summarized the law as recognized in the federal courts on this question:

"He who receives money or acquires negotiable paper in payment of a debt is a holder for value, and if he receives the money innocently, or acquires the commercial paper before its maturity, and without notice of any infirmity, has a perfect title, which cannot be subordinated to the equities of any third person."

[2] There is, to be sure, no direct evidence that P. M. Musica caused Seligman & Co.'s check to be transferred to the Hair Company and the proceeds deposited in its bank account "in payment of" any part of the then existing indebtedness of Musica & Son. But there is nothing to rebut the presumption arising from what was admittedly done. "It is undoubtedly the general rule that, in the absence of explanation, the presumption arising from the delivery of a check is that it was delivered in payment of a debt. * * * The law does not presume a gift." Nay v. Curley, 113 N. Y. 575, 21 N. E. 698, and cases cited. Neither, it may be added, does it presume a fraud. Therefore, since indebtedness at date of transfer is shown beyond doubt, "we must presume that a payment made * * * after such debt accrued was made on account of the debt. If it was really made on some other account, we must have some evidence of this before we can change the presumption." Masser v. Bowen, 29 Pa. 128, 72 Am. Dec. 619.

[3] The question remains whether the Hair Company received what the law presumes to have been a payment, innocently and without notice of any infirmity. This depends upon whether Musica's own knowledge of his own evil intent, and especially of the fraud which as a member of Musica & Son he had worked on Seligman & Co., is to be imputed to the bankrupt corporation because he was the president thereof; no other officer or director having any knowledge in the premises or any reason to suspect fraud or falsehood. On this point American National Bank v. Miller, 229 U. S. 521, 33 Sup. Ct. 883, 57 L. Ed. 1310, is conclusive. Changing to Musica the name of the corporation president who in that case occupied the rascal's position, a quotation from the decision is apt; for—

"the evidence before us presents another phase of the recurring question as to when and how far notice to an agent is notice to his principal. In view of the many decisions on the subject it is unnecessary to do more than to apply them to the facts of this case. If [Musica] within the scope of his office had knowledge of a fact which it was his duty to declare and not to his interest to conceal, then his knowledge is to be treated as that of the bank; for he is then presumed to have done what he ought to have done, and to have actually given the information to his principal."

See Carlisle v. Norris, 215 N. Y. 414, 109 N. E. 564; Stallo v. Wagner, 233 Fed. 383, 147 C. C. A. 315; also citations in Wilson v. Pauly, 72 Fed. 134, 18 C. C. A. 475.

239 F.—45

It is obvious that Musica was in duty bound to declare the origin of the check whose proceeds he caused to be added to the funds of the Hair Company; but it is equally plain that, if he was to carry through for even a little longer the elaborate scheme to defraud of which the Hair Company was an innocent party, his interest was to conceal that which he knew.

[4] It follows from the foregoing that the Hair Company became a holder for value, in good faith, and without notice, of Seligman's check before its maturity; i. e., before its presentation to the bank upon which it was drawn.

Since the Hair Company, and therefore its trustee in bankruptcy, occupies the favored position of bona fide holder for value of commercial paper, the maker of such paper cannot be creditor of such holder, by reason of the way in which the paper originated.

For this reason the order appealed from is affirmed, with costs.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes