NEELY *v.* CLARENCE SAUNDERS CO. *et al.*

(*Jackson,* April Term, 1935.)

Opinion filed April 6, 1935.

MARTIN & MARTIN, of Memphis, for appellants.

W. B. ROSENFIELD and CANADA & RUSSELL, all of Memphis, for appellee.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

The bill was filed by Neely to enforce a mechanics' lien on land in Memphis which had been sold to Saunders Company by Tennessee Realty Company, another

corporation and a defendant herein. The consideration given was $100,000 in notes payable to bearer, payment being secured by a deed of trust naming Union Planters' National Bank & Trust Company as trustee. Following the execution and registration of these instruments, the notes were negotiated by the vendor Realty Company to the aforesaid Bank & Trust Company as collateral to secure payment of (1) $10,000 loaned at the time, and (2) $95,000 of pre-existing indebtedness of the Realty Company to the bank. Some two months thereafter the Saunders Company contracted with Neely for certain concrete foundation work on the land. Following default on the part of Saunders Company in payment of a portion of the contract price, Neely brought this suit to enforce a lien upon the land. The chancellor, finding that the notice required by section 7924 of the Code to be given a mortgagee in order to fasten a lien superior to that of the mortgage had not been given, decreed that the lien of the mortgage indebtedness held by the Bank & Trust Company was therefore superior to that of Neely. His decree granted a lien to Neely upon the equitable interest only of Saunders Company in the land. The Court of Appeals reversed, holding that the statute had been substantially complied with; that an active officer of Realty Company participated in the execution of a written contract between Neely and Saunders Company for the doing of the work, and was familiar with its terms, and in legal effect consented thereto; that notice was thus given to and received by Realty Company, and that under the facts of the case Realty Company was the "mortgagee" to whom under the statute written notice must be given; and that no-

tice having thus been given to the "mortgagee," the mechanics' lien attached to the land in priority over the rights of the Bank & Trust Company, although a *bona fide* holder in due course of the mortgage notes. The Court of Appeals mistakenly refers to these notes as payable, not to bearer, as the record shows, but to Tennessee Realty Company, and it is possible that this error of fact may have influenced that court's conclusion, since, if this had been the case, Neely's notice would have been given to the record owner of the mortgage debt, and the ruling in *Fischer Lime & Cement Co.* v. *Kaucher*, 164 Tenn., 657, 51 S. W. (2d), 492, might have been held to have application, by analogy; although it is not intended to suggest that the holding in that case that a mechanics' "lien claimant is entitled to rely on the record title to show ownership" (and see *Thomas* v. *Setliffe*, 160 Tenn., 689, 28 S. W. (2d), 344; *Electric Light Co.* v. *Gas Company*, 99 Tenn., 371, 42 S. W., 19) would apply when negotiable paper was involved. In the instant case, the registered mortgage, in deed of trust form, did not show that Tennessee Realty Company had any interest whatever in the mortgage, its name nowhere appearing in the instrument.

The statute in question reads:

"7924, 3536 (1982). Priority over special lien of mortgagee.—If the contract be made with the mortgagor, and the mortgagee has written notice of the same, before the work is begun or materials furnished, and consent thereto, the lien shall have priority over the mortgage; and if he fail to object, in writing, within ten days after receipt of the notice, his consent shall be implied. (1857-58, ch. 24, secs. 1, 2.)"

34

We concur with the Court of Appeals in its holding, upon the facts set forth in its opinion, supported by the record, that Tennessee Realty Company is not in position to deny that it received notice of the contract and consented thereto, in substantial compliance with the requirements of the statute. No particular form of "written notice" is prescribed by the statute. It is not provided that the notice shall be given by the contractor, but only that "the mortgagee has written notice of the same, before the work is begun . . . and consent thereto." When the mortgagee has seen the written contract, he "has written notice of the same." And when he participates actively in its making, it cannot be said that he did not "consent thereto." And while there is evidence and much argument to the contrary, we find with the Court of Appeals that the knowledge and participation of its officers was that of the corporation; but does it follow that the mechanics' lien takes priority over the Bank & Trust Company as a holder in due course of the negotiable notes?

It is plausibly urged that in the circumstances of this case the Realty Company, not being the holder at the time of the debt evidenced by the mortgage secured notes, and never having been the payee of these notes, made to bearer, was not, in contemplation of this statute, the "mortgagee," and that notice to it was therefore without legal effect; and (2) that, in any event, the Bank & Trust Company, to whom the mortgage notes had been negotiated before the contract was made, or the work begun, and to whom confessedly no notice was ever attempted to be given, holds the mortgage debt in priority over and free from any claim on the part of the mechanic lienor.

In view of the concession which we understand to be made that the land has no value in excess of the debt held by the bank, the first of these questions just stated, however academically interesting, becomes practically moot. We proceed to consider, then, the question of the rights of the Bank & Trust Company as the holder of the mortgage notes.

In *Roach* v. *Woodall*, 91 Tenn., 206, 18 S. W., 407, 30 Am. St. Rep., 883, it was held, citing and approving *Nichol* v. *Bate*, 10 Yerg., 429, that, quoting from the headnote, "the *bona fide* holder of a negotiable note transferred to him before its maturity, as collateral security, upon a valid and sufficient consideration *accruing at the time of its transfer*, will be protected as an innocent holder for value in due course of trade." We have italicized words expressive of a condition eliminated by the Negotiable Instrument Law of 1899, chap. 94, secs. 25, 27 (Code secs. 7349 and 7351). Since the passage of this law a pre-existing debt is "value," even though the instrument is transferred merely as collateral security for such debt. *Crane & Co.* v. *Hall*, 141 Tenn., 556, 213 S. W., 414. In this connection, since we have here a negotiation by delivery, it is pertinent to note that by Code section 7354 it is provided that, "an instrument is negotiated when it is transferred from one person to another in such manner as to constitute the transferee the holder thereof. If payable to bearer it is negotiated by delivery, if payable to order it is negotiated by the indorsement of the holder completed by delivery." *Nickey Bros.* v. *Lonsdale Mfg. Co.*, 149 Tenn., 391, 258 S. W., 776, is a case in point. The bank's right to recover on mortgage bonds negotiated to it as collateral for a pre-exist-

ing debt was expressly adjudged. And in *McDowell* v. *McDowell*, 144 Tenn., 452, 234 S. W., 319, 18 A. L. R., 623, third persons were denied the right to recover their interests in bonds pledged to a bank in due course for value as collateral security.

If it be conceded that a vendor of land taking negotiable notes in payment continues to be the "mortgagee" designated in this mechanics' lien statute, after he has negotiated the notes for value before maturity to one who becomes an innocent holder in due course, there is neither reason nor authority for holding that rights of such a holder can, without notice to him, or his consent, be affected by a notice under this statute to the original holder or payee. Such a holding would be subversive of underlying principle of the law merchant.

The section of the mechanics' lien law now before us was enacted in 1857, nearly eighty years ago, when mortgage secured negotiable paper, in note and bond forms, was not common, as now. Probably for this reason, and also because the rights of *bona fide* holders of negotiable paper, in whatever form, and however secured, were at that time, as now, so firmly established, the Legislature did not conceive it to be necessary to make express provision for such a situation as we have before us, and for that presented whenever negotiable bonds are issued, secured by mortgage on real estate— an everyday transaction.

It has never been possible for original payees or holders of negotiable paper in any manner to affect, after negotiation, the rights of the holder in due course, and it is as well settled that the security given for the payment of negotiable paper passes with the negotiated

paper to the acquiring holder. *Clark* v. *Jones,* 93 Tenn., 639, 27 S. W., 1009, 42 Am. St. Rep., 931; *Union & Planters' Bank* v. *Smith,* 107 Tenn., 476, 64 S. W., 756; *W. C. Early Co.* v. *Williams,* 135 Tenn., 249, 186 S. W., 102, L. R. A., 1916F, 418. This mechanics' lien statute cannot be construed to create an exception.

It is argued that the Bank & Trust Company may not assert rights as the holder of said notes or bonds, because in its answer originally filed it disclaimed other interest in the matters involved than that incident to its relation as a naked trustee, holding the title. The chancellor permitted an amended answer to be filed explaining and excusing the mistake of fact made in the original answer. This action of the chancellor was assigned as error in the Court of Appeals, but that court did not pass on this assignment, holding it unnecessary to do so, since the priority of the Bank & Trust Company was being denied on the merits. Neely did not petition for *certiorari* and bring up this question and the point is made that it is not now before us. But, however this may be, we do not find that the chancellor abused the discretion vested in him in this matter. Quite obviously a mistake had been made, and justice would have miscarried had opportunity to correct it been refused.

It results that the decree of the Court of Appeals must be reversed, and the cause remanded to the chancery court for further proceedings in accordance with this opinion.