PEEPLES *v.* SMITH *et al.*

(*Knoxville,* September Term, 1941.)

Opinion filed March 13, 1942.

LEE, Cox & HIER and CHAS. E. RADER, all of Knoxville, and W. CURTIS POPE, of Memphis, for appellant.

TESTERMAN, AMBROSE & BADGETT, of Knoxville, for Home Owners Loan Corporation.

JAMES W. K. JOHNSON, of Knoxville, guardian *ad litem* for Geo. Wesley Peeples, Wilson Peeples, and Sadie Mae Peeples.

MR. JUSTICE DEHAVEN delivered the opinion of the Court.

Complainant, widow of J. A. Peeples, deceased, seeks by her bill herein to have her homestead and dower interest in a house and lot located in the City of Knoxville, Tennessee, declared superior to the rights of the Home Owners Loan Corporation under a trust deed executed by her deceased husband, in which she did not join, to secure the payment of a loan to him of approximately $2,000.

J. A. Peeples, on November 9, 1929, purchased the premises here in question by title bond from W. P. Toms and J. A. Morris, agreeing to pay therefor the sum of $3,500 represented by monthly installments of $30 per month and the assumption of a $1,500 mortgage indebtedness due the Bankers Trust Company. Thereafter, Peeples defaulted in his payments to Toms and Morris and to the Bankers Trust Company, and these creditors being unwilling to carry him any longer, Peeples, on April 10, 1934, made application to the Home Owners

Loan Corporation for a loan sufficient to refund the indebtedness against his home. The following, among other things, appears in this application: "9. Reasons for considering this a distress case Mortgagees demanding payment of principal and interest in arrears. 10. Are present mortgagees willing, or able to continue carrying indebtedness? No. If not, why? Arrears in payments. 11. Have you tried to refinance through other channels? No. Why unsuccessful? Knew of no place to go since property was mortgaged for more than he can borrow."

On June 23, 1934, J. A. Peeples executed "Statement of Application for Compliance with Section 4(1) of Home Owners Loan Act as Amended." In this statement, among other things, the following appears:

"(1) The undersigned applicant to the Home Owners Loan Corporation for a loan upon applicant's home property understands that under the Home Owners' Loan Act of 1935 as amended, he is not entitled to a loan unless the mortgage or other obligation or loan which it is sought to be taken up was in involuntary default on June 13, 1935, with respect to the indebtedness on said property and that he is unable to carry or refund his present indebtedness, . . ."

The agreed purpose of the loan was to refund the lien indebtedness on Peeples' home. The loan was made on this basis and was closed by the Home Owners Loan Corporation paying Toms the balance due him on the purchase price of the property and paying off the mortgage held by the Bankers Trust Company. Toms had acquired the interest of Morris. No deed had been executed conveying the property to Peeples until the balance due Toms was paid to him by the Home Owners Loan

Corporation. Peeples executed a deed of trust to secure the Home Owners Loan Corporation in the payment of the sum loaned him.

Complainant and her husband, Peeples, became estranged and lived apart from and after 1925. He resided in Knoxville and she resided in Memphis. She had never lived with him in Knoxville. When the loan was made by the Home Owners Loan Corporation it had no notice or knowledge that Peeples had a wife. On the contrary, Peeples represented to the Corporation in his written application for the loan that he was "single." Not only so, but in a report made by Dun & Bradstreet to the Corporation with reference to Peeples' application for a loan it was stated, among other things, that Peeples was "age about 35," following this word "married" shows a line drawn through it and written above it the word "divorced." The record does not show when or by whom the correction was made, but it may be assumed that it was made before the report was delivered to the Corporation, or before the loan was made, because, otherwise, it would have been required that the wife join in the execution of the deed of trust to secure the loan. It is perfectly true, we think, that the Corporation in the utmost good faith had the loan transaction with Peeples relying on his representation that he was a single man. The mistake of fact with reference to Peeples' status was induced by the false representation of Peeples and by the report of Dun & Bradstreet. But, it is insisted that the Corporation was negligent in making the loan because the report of Dun & Bradstreet had the word "married" stricken out and the word "divorced" written over it and that this should have put the Corporation on notice and had it investigated the court records of Knox County

the fact could have been ascertained that back in April, 1930, Peeples had instituted an action for divorce against his wife, which had never been carried to decree. There is no showing whatever that the Corporation had any notice of the divorce proceedings. As hereinbefore stated the record does not disclose when the word "divorced" was written above the stricken word "married;" but it would do violence to common sense to presume that the Corporation made the alteration. No motive can be conceived why the Corporation should alter this report. The loan had not been made when the report came in and there was still time within which to require the wife to join in the execution of the deed of trust, if it was, in fact, advised that Peebles was married. It challenges credulity to say that the Corporation, without any motive for gain in the transaction, should deliberately take a deed of trust from a married man without having the wife to join in to waive homestead and downer.

The Corporation in its answer specifically avers the right to be subrogated to the lien for purchase money held by Toms and the Bankers Trust Company. The money obtained from the Corporation was loaned for the specific purpose to pay off these liens and the money thus obtained was actually used for that purpose, all with the understanding that the corporation should have a first lien on the property.

 Generally speaking, equity assumes jurisdiction to administer relief by subrogation when it is necessary to prevent fraud and to relieve against mistake. In *Dixon* v. *Morgan,* 154 Tenn., 389, 285 S. W., 558, 560, speaking of subrogation the court quoted with approval the following text from 25 Ruling Case Law, p. 1313:

" 'It is a doctrine therefore which will be applied or

not according to the dictates of equity and good conscience, and consideration of public policy, and will be allowed in all cases where the equities of the case demand it. It rests upon the maxim that no one shall be enriched by another's loss, and may be invoked wherever justice demands its application, in opposition to the technical rules of law which liberate securities with the extinguishment of the original debt. The right to it depends upon the facts and circumstances of each particular case, and to which must be applied the principles of justice. In the administration of relief by subrogation, it will be found that the jurisdiction of equity rests largely on the prevention of frauds and on relief against mistakes; and the expansion of the rule has so nearly covered the field that it may now be said that, wherever a court of equity will relieve against a transaction, it will do so by the remedy of subrogation, if that be the most efficient and complete that can be afforded.' ''

In *Walker* v. *Walker,* 138 Tenn., 679, 200 S. W., 825, it was held that mistake of fact is ground for equitable relief against payment of a debt of another so as to entitle the one who pays it through mistake to be subrogated to the rights of the payee. The court said, ''The doctrine of subrogation is steadily expanding in its practical administration so as to embrace all cases where complete justice cannot be done without it.'' (Citing authorities.) To like effect, see *Old Natl. Bank* v. *Swearingen,* 167 Tenn., 529, 537, 72 S. W. (2d), 545, and cases therein reviewed.

 Subrogation or equitable assignment by way of relief from mistake or fraud will not be granted in equity, if the party seeking such relief has been guilty of culpable negligence. In *Dixon* v. *Morgan, supra,* the

question of culpable negligence in connection with the equitable doctrine of subrogation or equitable assignment is discussed at some length and many authorities cited.

In the instant case, we are unable to see that the Corporation was guilty of any negligence, let alone culpable negligence.

The money of the Corporation was used, under the specific authority of Peeples, to acquire the legal title of the property from Toms and to satisfy the mortgage debt owing to the Bankers Trust Company, as has been hereinbefore stated. Without this loan, the property would have been lost to Peeples. He stated in his affidavit furnished the Corporation:

"He does herewith warrant, represent, and aver that said property is in danger of immediate foreclosure, that he has made every reasonable effort to refinance his mortgage or loan on said property but without success and further, that unless he secures the relief sought in his application, he will lose above described property."

Complainant, of course, has homestead rights in any surplus over and above the amount of the secured indebtedness realized on the sale or foreclosure of the property.

Both the chancellor and the Court of Appeals held the Corporation entitled to subrogation, and we concur in this view.

*Certiorari* must be denied.