# POSTON v. ÆTNA INS. CO.—194 S. W. (2d) 248.

Eastern Section. March 16, 1946.

Petition for Certiorari denied by Supreme Court, May 4, 1946.

Wilbur W. Piper and H. F. Atkins both of Knoxville, for appellant.

Poore, Kramer & Overton and Ben Kohler, Jr., all of Knoxville, for appellee.

BURNETT, J.  Mrs. Poston filed the original bill in this cause against one Heiskell and Aetna Insurance Company. She alleged that she left her automobile with Heiskell for body repairs requiring no mechanical work and that while the automobile was in the custody of Heiskell an employee of Heiskell's took the automobile, without the consent of Mrs. Poston, on a personal mission and while thus using the automobile, was involved in an accident totally demolishing the automobile. It was also alleged that this taking was in violation of Code Section 10948 and the taking therefore was larceny. She also alleged that the Aetna Insurance Company had written her a policy of insurance covering among other things "loss of or damage to the automobile caused by theft, larceny, robbing or pilferage."

A judgment pro confesso was taken against Heiskell. Subsequently proof was taken as to him and a final judgment rendered.

The insurance company (appellee) demurred to the bill "assigning four grounds, in substance, first, that the bill was multifarious, because seeking recovery against both defendants; second, because appellant was not entitled to relief, her bill showing possession had been given to the defendant Heiskell for repairs, that he was a bailee when the automobile was damaged, and Ryan an employee and working in his garage, and both Ryan and Heiskell had constructive possession of the automobile when damaged; third, that the matters contained in the bill did not create any obligation on the defendant enforceable in the Chancery Court; fourth, because the bill showed on its face that Ryan was an employee of Heiskell as an automobile mechanic, that Ryan took the automobile from the garage during working hours and by this Ryan and Heiskell were bailees in constructive possession and that Ryan was only guilty or violating section 10847 of Williams Code of Tennessee, his act being a misdemeanor and not a larceny."

The Chancellor overruled the first but sustained the second, third, and fourth grounds of the demurrer and in doing so said in part: "Because the conplainant is not entitled to the relief she prays, nor to any relief, her bill showing that possession had been given to the said defendant, Eugene Heiskell, for repairs, and that the said Eugene Heiskell was a bailee of complainant at the time the automobile was damaged and that Hebert M. Ryan was an employee of the bailee working at and in the garage of the defendants bailee and that, therefore, the said Ryan, as well as the defendant Heiskell, had and were in construc-

tive possession of the automobile at the time it was damaged."

Both parties duly excepted to the action of the Chancellor, prayed an appeal, perfected same and have assigned errors.

It is insisted by the insurance company that in taking this automobile the employee of Heiskell was guilty, at most, of violating Chapter 28 of the Acts of 1911 which is carried into the Code at section 10847 and provides: "It shall be unlawful for any chauffeur or any other person in like capacity to use the automobile of another without the owner's permission or consent."

The Code Section following denominates the violation of the above quoted section as a misdemeanor.

It is insisted by Mrs. Poston that the acts of the employee as set forth in the bill constitute a violation of Chapter 17 of the Acts of 1921, which is carried into the Code as Section 10948 and provides: "It shall be a felony, punishable as larceny for any person to take the automobile, motorcycle, motor truck, electric automobile, or truck, or vehicle of like character, belonging to another, without such owner's consent, whether such person taking such vehicle intends to deprive the owner thereof and appropriate the same to his own use permanently, or merely intends to use the same without such owner's consent temporarily and thereafter either abandon such vehicle or return the same to the owner."

It was held in Bailey v. State, 150 Tenn. 598, 600, 266 S. W. 122, that the later Act did not repeal the first Act.

The determinative question is therefore, whether at the time of the accident the automobile was being driven by a "chauffeur or any other person of like capacity."

■ We think that it should be kept in mind that we are considering a demurrer to the allegations of a bill. We must also remember that ''a policy of insurance is to be construed strictly against the company and is to be interpreted according to the laws of the State in which it is issued.'' Glove & Rutgers Fire Insurance Co. v. Henry House, 163 Tenn. 585, 45 S. W. (2d) 55.

In Bailey v. State, supra, the court said: ''It cannot be said there was a legislative intent to repeal the earlier act and impose the harsh penalty of the later one upon chauffeurs and those of that class who, while in the attitude of bailees or in possession of cars under their employment, put them to unauthorized use.''

■ The last above quoted language in effect states those who belong in the misdemeanor class, i. e., those that have been in some way trusted with the possession of the owner's automobile. Let us analyze the key words in the Act. In thinking of a *''chauffeur''* we think of one who is in the employ of another for the purpose of operating the automobile of his employer. There constantly arises the thought of close relationship as that of master and servant, one of respondeat superior. Would one think of Heiskell's employee in a related position to Mrs. Poston? She had never seen or heard of the man in so far as this record discloses. In her employment of Heiskell to repair this car there was no mechanical work requiring the car to be driven in this employment. It seems to us it is a far-fetched construction of the word *''chauffeur''* to say the man who was driving this car was Mrs. Poston's *''chauffeur''*.

The other key words in this Act is ''like capacity'', i. e., one retaining a ''like capacity'' to ''chauffeur''. Webster defines the adjective *''like''* to mean ''having the same,

or nearly the same, appearance, qualities, or characteristics; resembling; similar to."

The legislature in enacting the two Acts heretofore quoted evidently felt that when one is trusted with the automobile of another and while this car is in their possession they take a joy ride of their own they should only be punished slightly while one who takes a car which is not intrusted to them by the owner should have a more severe punishment. In other words, the owner of the car assumes some responsibility in his selection of those to whom he trusts his automobile. This responsibility is not present when a total stranger takes the car. This is merely an enlargement and different way of stating what the court held in Bailey v. State, supra, Globe & Rutgers, etc., v. House, supra, and in Stovall v. New York Indemnity Co., 157 Tenn. 301, 8 S. W. (2d) 473, 72 A. L. R. 1368.

It is argued by the insurance company "that Ryan (Heiskell's employee who took the car) acquired a lawful possession of said automobile under a color of authority by reason of his employment and that, therefore, his status is the same as if he were in the position of his employer, Heiskell, the bailee."

We do not agree with this argument. The legislature made it "a felony, punishable as larceny for any person to take the automobile" without the owner's consent by the Act of 1921. The harshness of this Act is modified by the Act of 1911 when the car is taken without the owner's consent by "any *chauffeur* or any other person in like *capacity*." For the reasons heretofore set forth Ryan does not come under this excepted class.

Let us suppose that A's *chauffeur* took A's car on a mission for A and that after the *chauffeur* had parked the car and was in the store attending to the mission for A that B who was an employee of the *chauffeur* had

taken the car for his B's own enjoyment would he merely be guilty of violating the Act of 1911 because he was an employee of the chauffeur? We think not because A did not know B; did not trust his automobile with B; there is no relationship of master and servant or bailor and bailee between A and B.

It seems that the chancellor's conclusions herein (above quoted) were based on the erroneous statement that "Ryan (employee of bailee who had wreck with car) and the said Heiskell (bailee) were bailees of said automobile."

A "bailee" is one who receives personal property from "another in trust for a specific purpose, with a contract, express or implied, that the trust shall be faithfully executed and the property returned or duty accounted for when the special purpose is accomplished, or kept until the bailor reclaims it". 6 Am. Jur., page 141, section 4.

The obligation of the contract is personal and in a suit by the "bailor" against the "bailee" ordinarily the servant of the "bailee" stands in the place of his employer. Any other conclusion would be a temptation for all bailees to place responsibility on irresponsible servants. The servant though is not the bailee of the bailor in a suit against a third party for the unlawful acts of the servant of the bailee. This certainly should be true when the third party is attempting to evade liability under an act of the legislature fixing a minor punishment for those having a personal relationship and a harsh punishment for those not having such a personal relationship. The relationship of the bailee and his employee is that of master and servant. Such a relationship does not extend to the bailor. The bailor has "constructive possession" of the bailed property. The "bailee" has bare custody of the property. This "bare custody" has not been, in

any way, intrusted to the "bailee's" servant by the bailor—he does not know the servant.

The insurance company has assigned as error the failure of the Chancellor to sustain its first ground of demurrer, i. e., because the bill sought judgment against it on its contract of insurance and also sought judgment against a bailee for breach of a contract of bailment.

██ ██ We think the Chancellor was correct in this ruling. The bill sought a recovery against two defendants for the same. damages. This damage arose from the destruction of an automobile in the possession of one defendant as bailee and against the insurance company for the failure to pay under the contract of insurance on said automobile. If judgment is rendered against the insurance company it has the right to subrogation against the other defendant. It seems to us that the joining of the two defendants tends to simplify the matter rather than complicate it. Ordinarily the action of the court on a demurrer on this ground is "a matter of discretion". See Gibson's Suits in Chancery, section 149.

The decree sustaining the second, third and fourth grounds of the demurrer is accordingly reversed and the cause remanded for further proceedings in accordance with this opinion. The costs of the appeal will be taxed against the insurance company, appellee. The costs below will await the outcome there.

Hale and McAmis, JJ., concur.