**STONE & WEBSTER ENGINEERING CORP. et al. v. HAMILTON NAT. BANK, for Use and Benefit of EMPLOYERS' LIABILITY ASSUR. CORP., Limited.**

No. 11322.

United States Court of Appeals
Sixth Circuit.

Decided Oct. 7, 1952.

Miller, C. J., dissented.

J. H. Doughty, Knoxville, Tenn. (Hodges & Doughty, Knoxville, Tenn., on the brief), for appellants.

·Howard F. Jarvis, Knoxville, Tenn. (Jennings, O'Neil & Jarvis, Knoxville, Tenn., on the brief), for appellee.

Before MARTIN, McALLISTER and MILLER, Circuit Judges.

MARTIN, Circuit Judge.

In a court action tried in the United States District Court for Eastern Tennessee, judgment for $5,000, with accumulated interest, was awarded the appellee, Hamilton National Bank, for the use and benefit of its insurer, The Employers' Liability Assurance Corporation, Limited, against the appellants, Stone & Webster Engineering Corporation and its insurer, Liberty Mutual Insurance Company. Liability was grounded upon substantial evidence that Clyde Bales, an employee of Stone & Webster, had stolen $5,000 in cash from the Hamilton National Bank and turned it in to his employer's coffers in an effort to cover up an existing shortage in his accounts.

The record discloses that the appellee bank which operated a facility at Oak Ridge, Tennessee, was insured against loss by theft under a policy issued by the appellee insurance company. The appellant, Stone & Webster, carried on business activities in Oak Ridge and was insured by the appellant insurance company against loss due to the dishonest or fraudulent acts committed by any employee of that engineering corporation. Among the duties of his employment, Bales, as Chief Clerk of the War Bond Department of Stone & Webster, transacted business in Oak Ridge with the Hamilton National Bank, which supplied the bonds sold by Bales for cash and by payroll deductions to employees of Stone & Webster and to the general public. Additionally, he handled the sale of cigarettes, bus tickets and train tickets, and conducted various relief drives. In the performance of these duties, Bales handled an average of $25,000 to $30,000 each month in cash or its equivalent.

In order to permit him to perform his duties, the Hamilton National Bank gave Bales access to its banking house. Thus, he was enabled to steal from the bank the $5,000 in cash which he placed in the treasury of Stone & Webster as a credit to himself, by having a cashier of that corporation sign receipts to him when he turned in the funds which he had stolen from the bank. Concededly, the Stone & Webster Engineering Corporation had no knowledge of the thefts of Bales at the time the stolen money was turned over by him to its cashier.

On this appeal, Stone & Webster and its insurer, Liberty Mutual, contend that any money stolen by Bales from the bank was negotiable in character and, if used by him in payment of his preexisting indebtedness to Stone & Webster, passed title to the stolen money to his employer. They assert that Stone & Webster became handler of the monies as negotiable instruments in due course, good faith and for value, and without notice of defect in the title of Bales, the negotiator. It is urged, moreover, that monies used by Bales in paying any indebtedness owed by him to Stone & Webster were mingled with the general assets of that corporation so as to be indistinguishable, in consequence of which the bank is not entitled to a recovery.

Appellants set up the further defense that no privity of contract existed between the appellee Hamilton National Bank and the appellant Liberty Mutual Insurance Company which would entitle the bank to maintain this action, inasmuch as any obligation assumed by Liberty Mutual was solely for the use and benefit of its assured, Stone & Webster Engineering Corporation, and was distinctly not for the benefit of the Hamilton National Bank. Other defenses of appellants are: (1) that the bank had elected to pursue its claim against its insurer, The Employers' Liability Assurance Corporation, Limited, and having so elected should not be permitted to make later claim against Stone & Webster and its insurer, Liberty Mutual; (2) that Employers' Liability accepted monetary remuneration for its contract and obligated itself to pay the bank for losses resultant from the misconduct of others, and as such paid surety cannot recover from an innocent party; (3) and that Employers' Liability may not be subrogated to any claim which the bank might have against Stone & Webster, or Liberty Mutual, for the alleged reason that subro-

gation can be obtained only against the party causing the loss and not against innocent parties.

Briefly sketching the somewhat overlapping arguments of appellants, they contend that, if the statutes and decisions of Tennessee are controlling, the United States District Court was in error in holding as it did that money is not a negotiable instrument under section 7325 of Williams Tennessee Code Annotated.[1] They cited Union National Bank v. Bluff City Bank, 152 Tenn. 486, 496, 279 S.W. 797. They contend, however, that the District Court erred in applying Tennessee law, for the reason that the rights and duties of the United States on commercial paper which it issues are governed by Federal rather than by local law. Clearfield Trust Co. v. United States, 318 U.S. 363, 366, 63 S.Ct. 573, 87 L. Ed. 838; National Metropolitan Bank v. United States, 323 U.S. 454, 456, 65 S.Ct. 354, 358, 89 L.Ed. 383; United States v. Standard Oil Company of California, 332 U. S. 301, 305–311, 67 S.Ct. 1604, 91 L.Ed. 2067. But the appellants, citing cases none of which we think establishes their proposition, state that under either Tennessee or Federal authorities the court committed reversible error in holding that paper money is not a negotiable instrument. They say further that the District Court erred in finding that Stone & Webster did not receive monies from Bales in due course of trade; in holding that Stone & Webster became unjustly enriched when it received the stolen monies from Bales; and in declining to find that any monies allegedly stolen by Bales from the bank were negotiable in character and, if used by Bales in payment of a preexisting indebtedness to Stone & Webster, passed title to the monies to that corporation with the result that the equivalent of such monies could not be recovered by the bank or its insurer.

Appellants contend further that the District Court erred in refusing to find that, if Bales paid any indebtedness owed by him to Stone & Webster, he did so with negotiable currency of which Stone & Webster became holder in due course, in good faith, and for value, and without notice of any defect in the title of the thief, Bales, who negotiated it.

Appellants, resting upon the proposition that currency of the United States, being payable to the bearer on demand, is a negotiable instrument, insist that a person is a holder in due course and for value who receives currency in extinguishment of a preexisting debt. In support of this contention, appellants quote section 7349 of the 1932 Code of Tennessee, which provides: "Value is any consideration sufficient to support a simple contract. An antecedent or preexisting debt constitutes value; and is deemed such whether the instrument is payable on demand or at a future time."

The opinion of the Supreme Court of Tennessee in Figuers v. Fly, 137 Tenn. 358, 373, 374, 193 S.W. 117, is cited to the effect that the bank to which a forged check was given in payment of a preexisting debt is a holder for value, though it was the payee and not an endorsee on purchase or discount, especially where it surrendered in return for the check a note signed by personal solvent sureties. Among other authorities cited in support of its argument upon the point are Crane & Co. v. Hall, 141 Tenn. 556, 213 S.W. 414; Nickey Bros. v. Lonsdale Mfg. Co., 149 Tenn. 391, 258 S.W. 776; Neely v. Clarence Saunders Company, 169 Tenn. 30, 81 S.W.2d 390; 36 American Jurisprudence (1941), pages 460–461; State National Bank v. United States, 114 U.S. 401, 5 S.Ct. 888, 29 L.Ed. 149; Rankin v. Chase National Bank, 188 U.S. 557, 23 S.Ct. 372, 47 L.Ed. 594; Gale v. Chase National Bank, 2 Cir., 104 F. 214.

1. Section 7325. "(1) Form of negotiable instrument.—An instrument to be negotiable must conform to the following requirements:

"(1) It must be in writing and signed by the maker or drawer;

"(2) Must contain an unconditional promise or order to pay a sum certain in money;

"(3) Must be payable on demand, or at a fixed or determinable future time;

"(4) Must be payable to order or to bearer; and

"(5) Where the instrument is addressed to a drawee, he must be named or otherwise indicated therein with reasonable certainty. (1899, ch. 94.)"

The opinion of this court in Kean v. National City Bank, 6 Cir., 294 F. 214, 222, is cited to the effect that "where the agent, for himself or for another, is dealing at arm's length with his principal, as any stranger might deal, the principal is not charged with the knowledge of the agent in respect to such transaction." Section 7349 of Williams Tennessee Code is quoted in support of the proposition that an antecedent or preexisting debt constitutes value and is sufficient to establish consideration.

Appellants next argue that the knowledge possessed by Bales that he had stolen the money used by him in discharging his indebtedness to Stone & Webster is not imputable to that corporation as his employer. Smith v. Mercantile Bank, 132 Tenn. 147, 177 S.W. 72.

In support of its insistence that The Employers' Liability Assurance Corporation is not entitled to subrogation, appellants cite American Surety Co. of New York v. Bank of California, 9 Cir., 133 F.2d 160; United States Guarantee Co. v. Hamilton National Bank, 189 Tenn. 143, 223 S.W.2d 519; New York Title & Mortgage Co. v. First National Bank of Kansas City, Mo., 8 Cir., 51 F.2d 485, 77 A.L.R. 1052.

We have attempted to set forth fully the contentions of appellants and will now consider the arguments made by attorneys for the appellees.

First, appellees say that while performing the regular duties delegated to him by his employer, Bales, through the arrangements made by his employer which gave him access to the banking house of the Hamilton National Bank, was enabled to steal $5,000 from that institution and to place the money in the treasury of his employer as a credit to himself against an existing shortage, thereby unjustly enriching Stone & Webster by means of dishonesty on the part of its employee, whose crooked actions could confer no rights upon his employer. They urge that since neither Stone & Webster nor its insurer, Liberty Mutual, supplied any consideration for the stolen money, the action of Bales in having an entry made upon the books of his employer and in having its agent write him a receipt for the stolen funds with a resultant credit to him, did not cause Stone & Webster to change its position, but consisted merely in a book entry. They argue that, inasmuch as Bales endeavored to repay a part of his defalcation to Stone & Webster with the money which he had stolen from the bank, Stone & Webster cannot close its eyes to the fact that this deposit was made with money which Bales had no right to use and its cashier no right to receive; and that, inasmuch as Liberty Mutual had insured Stone & Webster against the dishonest acts of its employee, Bales, the primary and underlying obligation to Stone & Webster is that of Liberty Mutual Insurance Company which, for a valuable consideration, had guaranteed the honesty of Bales.

Appellees contend further that the benefit resulting from the theft by Bales of $5,000 from the bank was received solely by Stone & Webster and its insurer, Liberty Mutual, which had received a premium for guaranteeing Bales' honesty, there being in the transaction no adversary relationship between Bales and Stone & Webster; that he was acting throughout for the benefit of his employer and the employer's insurer, by attempting to recoup for the employer an existing loss caused by his dishonesty and to thereby conceal his previous theft.

Appellees insist, moreover, that Stone & Webster, having placed its agent, Bales, in a position which enabled him—while acting apparently within his authority—to commit the theft in question, was subject to liability to the bank for the fraud of its agent, regardless of the assumption that Stone & Webster was entirely innocent of wrongdoing, for the reason that it received the benefit of the theft. This made Stone & Webster a constructive trustee for the bank, since the depositing of the money by its employee, Bales, in its treasury was purely a formality. It is urged that Stone & Webster should not be permitted to recoup its losses by in effect ratifying a theft by its employee from an innocent third party.

The further argument is made that if Stone & Webster be required to repay the

$5,000 to the bank, it may recover that amount from its insurer, Liberty Mutual; and that the primary obligation of the Liberty Mutual Insurance Company to Stone & Webster Engineering Corporation covering the dishonesty of Bales has been discharged by the bank and its insurer, which at no time contracted to be responsible for the dishonesty of Bales. Under all the circumstances, it is insisted, Liberty Mutual should not be unjustly enriched, which it will be unless the judgment of the District Court is affirmed.

The respective contentions of the parties have been elaborated but it is regarded as unessential to discuss in detail the relevant merits or demerits of each point made. It will be sufficient to state the basis upon which our conclusions rest. In the first place, it has been established by most substantial evidence that Bales stole $5,000 in cash from the Hamilton National Bank by purloining from a table behind a teller's window packages of money aggregating that amount and carrying the currency away without permission. It is also well established that Bales stole the money to repay a shortage in his accounts with his employer, Stone & Webster.

We agree with the finding of the trial judge that Stone & Webster did not receive the money involved "in the course of trade"; that it gave nothing for the money, merely making book entries; and that it surrendered no evidence of debt against its employee and impaired its position in no particular. The opinion in United States v. State National Bank of Boston, 96 U.S. 30, 35, 36, 24 L.Ed. 647, is considered in point. There, the court said: "An action will lie whenever the defendant has received money which is the property of the plaintiff, and which the defendant is obliged by natural justice and equity to refund. The form of the indebtedness or the mode in which it is incurred is immaterial. Bayne, Trustees v. United States, 93 U.S. 642, 23 L.Ed. 997. * * * But surely it ought to require neither argument nor authority to support the proposition, that, where the money or property of an innocent person has gone into the coffers of the nation by means of a fraud to which its agent was a party, such money or property cannot be held by the United States against the claim of the wronged and injured party. * * * His [the agent's] doings were vitiated by the underlying dishonesty, and could confer no rights upon his principal."

The principle thus announced undoubtedly applies here. On the evidence in the case, Stone & Webster Corporation does not occupy the position of a bona fide purchaser for value. It parted with no valuable consideration in receiving the money stolen by Bales and put into its treasury. Its remedy is against Bales and his insurer, Liberty Mutual Insurance Company. The mere writing of a receipt and the crediting of the sum placed by Bales in its treasury would not constitute in the circumstances the payment of a consideration by it. An employer cannot profit by adopting the illegal act of its employee, made possible by his employment. True, the weight of authority is to the effect that it is sufficient for the receiver of stolen money to act in good faith and without notice of its tainted character. But he must also have parted with a valuable consideration therefor; and so, if he is a mere depository for the thief, the money may be recovered from him. See First National Bank v. Gibert, 123 La. 845, 49 So. 593, 25 L.R.A.,N.S., at page 635, and cases there cited. So, also, unless he has changed his position, a principal whose agent has acquired fraudulently property for his employer must hold it subject to the interests of the defrauded person. A principal who accepts the fruits of fraud practiced by his agent cannot repudiate the agent and his knowledge and at the same time retain the benefits derived from the fraudulent transaction. 2 Amer. Jurisprudence, Agency, section 380; Curtis C. & H. Co. v. United States, 262 U.S. 215, 43 S.Ct. 570, 67 L.Ed. 956. See American Law Institute Restatement of the Law of Agency, section 263, page 584.

In discussing the effect of the decision in Atlantic Cotton Mills v. Indian Orchard Mills, 147 Mass. 268, 17 N.E. 496, Judge Taft, when Circuit Judge, said: "The corporation parted with nothing for the checks

or money received by it. The transaction was one in which the agent was not securing anything from his principal. The benefit secured by the theft moved solely to the principal. There was no adversary relation between the agent and the principal at all. The agent was acting throughout for the benefit of his principal in an attempt to recoup for it an existing loss, and thereby to conceal his own previous thefts." Thomson-Houston Electric Co. v. Capitol Electric Co., 6 Cir., 65 F. 341, 344.

■ The American Law Institute Restatement of the Law of Agency strongly supports the position of appellees. In section 261, Chapter 7, it is stated: "A principal who puts an agent in a position that enables the agent, while apparently acting within his authority, to commit a fraud upon third persons is subject to liability to such third persons for the fraud." Undeniably, the theft in question was made possible by the nature of Bales' employment with Stone & Webster. He was permitted behind the teller's cage for the reason that he appeared to be acting in the ordinary course of business entrusted to him by his employer, and was thus enabled to steal from the bank and to place the benefits of his theft in the treasury of his principal, who received the money through a cashier acting merely as a depository. See Restatement of the Law of Agency, section 274, Chapter 8. For illustrative cases, see Union Bank v. Campbell, 23 Tenn. 394; Tagg v. Tennessee National Bank, 56 Tenn. 479, 484, 485.

We agree with the contention of appellees that Federal Surety Company v. Union Indemnity Company, 161 Tenn. 621, 33 S.W.2d 421, lends authoritative support to the action of the district judge in entering judgment against both Stone & Webster and Liberty Mutual, its insurer. In that case, the equities between two insurers of a defaulter were weighed and one was permitted to recover from the other an amount paid by it for the defalcation of a person whose honesty had been guaranteed. For brevity's sake, the somewhat involved facts of that case will not be discussed, but the case is not distinguishable in principle from that at bar.

■ In our judgment, it was properly held by the District Court that the fact that the insurance company, for whose use and benefit this action was brought by the appellee bank, was a paid surety does not preclude the insurer, by virtue of its right to subrogation, from recovering from Stone & Webster the amount of money stolen by Bales and turned in to his employer.

In Peeples v. Smith, 178 Tenn. 491, 496, 159 S.W.2d 832, 833, 834, the State Supreme Court reviewed the authorities relating to subrogation and quoted from Walker v. Walker, 138 Tenn. 679, 200 S.W. 825, as follows: " 'The doctrine of subrogation is steadily expanding in its practical administration so as to embrace all cases where complete justice cannot be done without it.' (Citing cases)." It was pointed out that, in an earlier case, Dixon v. Morgan, 154 Tenn. 389, 285 S.W. 558, 560, the court had quoted approvingly from 25 Ruling Case Law, page 1313, to the effect that subrogation is a doctrine which will be applied, or not applied, in accordance with the dictates of equity and good conscience and considerations of public policy; and will be allowed in all cases where the equities demand it. It was said that the doctrine rests upon the maxim that no one shall be enriched by another's loss and may be invoked whenever justice demands its application. The right to it depends upon the facts and circumstances of each particular case. Compare New York Casualty Co. v. Sinclair Refining Co., 10 Cir., 108 F.2d 65, 70, where the Court of Appeals said: "The doctrine of subrogation is not confined to the relation of principal and surety. It has been expanded so that it is now broad enough to include every instance in which one person, not acting voluntarily, pays a debt for which another is primarily liable, and which in equity and good conscience should have been discharged by the latter."

In our opinion, the District Court correctly answered the argument of Liberty Mutual Insurance Company that this action could not be maintained against it for the reason that no privity of contract existed between it and the Hamilton National Bank. The court observed that in its blank-

et crime policy, Liberty Mutual had insured Stone & Webster for loss of property due to any dishonest or fraudulent act of any of its employees, and the embezzlement of money by an employee covered by the insurance. The court reasoned: "Had there been no theft from the bank to cover the employee's shortages, Liberty would have had to make good on them. It results that by the employee's theft Liberty, too, has been unjustly enriched at the expense of the bank. Again, if it were assumed that the bank obtained a judgment against Stone & Webster for the $5,000.00 and Stone & Webster paid the judgment, the shortage would come into existence again. Liberty would then be indebted to Stone & Webster in the amount of $5,000.00. If the judgment were not paid, would there be any legal means by which Liberty's debt to Stone & Webster could be reached? Garnishment, of course, suggests itself. So, in one way or another, the necessity for reimbursing the bank would ultimately fall upon Liberty."

In Carter v. E. T. & W. N. C. Transp. Co., 243 S.W.2d 505, the Tennessee Court of Appeals for the Eastern Division said, at page 508 of its opinion: "The next assignment asserts the complainant has no right to maintain this action for the use and benefit of its insurance carrier; that there was no privity of contract between the defendant and the insurance carrier. In short, that no right of subrogation existed. No authorities are cited to support this contention, which is in the very teeth of what we know is common usage. The contract between complainant and its insurer contained a subrogation clause. Even without such a contractual provision the insurer would have been subrogated to the rights of the insured. Kentucky Marine & F. Ins. Co. v. Western & A. R. Co., 67 Tenn. 268; Louisville & N. R. Co. v. Manchester Mills, 88 Tenn. 653, 14 S.W. 314; Deming v. Merchants, etc. Co., 90 Tenn. 306, 17 S.W. 89, 13 L.R.A. 518; Anderson v. Miller, 96 Tenn. 35, 33 S.W. 615, 31 L.R.A. 604; Poston v. Aetna Ins. Co., 29 Tenn. App. 115, 194 S.W.2d 248."

Inasmuch as no valuable consideration was given by Stone & Webster for the money which Bales stole from the bank and passed along to it, it is of no consequence in our judgment as to whether or not money is a negotiable instrument. See 36 Amer. Jurisprudence, page 460. In our view, it is immaterial whether the District Judge was right or wrong in what he said upon the subject of the negotiability of money.

To summarize our conclusions, the Hamilton National Bank sustained a loss of $5,000 through the theft of its funds by Bales, an employee of Stone & Webster. It recouped that loss from its insurer, The Employers' Liability Assurance Corporation, Limited. Upon equitable principles, inasmuch as the loss thus incurred by Employers' Liability resulted from the dishonest act of Bales, his employer, Stone & Webster, who received the stolen money, should be required to return it. Liberty Mutual, which guaranteed Stone & Webster against its employees' dishonesty, must bear the ultimate loss from the dishonest actions of Bales of whose honesty it was a paid insurer.

The judgment of the District Court is affirmed.

MILLER, Circuit Judge (dissenting).

In my opinion the case presents a plain question of the law of negotiable instruments.

The rights of the parties in the stolen currency are governed by federal rather than by local law. Clearfield Trust Co. v. United States, 318 U.S. 363, 366, 63 S.Ct. 573, 87 L.Ed. 838; National Metropolitan Bank v. United States, 323 U.S. 454, 456, 65 S.Ct. 354, 89 L.Ed. 383. The term "negotiable" in its commercial sense is applied to paper which passes in the business world from hand to hand by endorsement and delivery, or by mere delivery, and which in the hands of a holder in due course is unaffected by defenses against it in the hands of the former owner. Shaw v. Railroad Co., 101 U.S. 557, 562, 563, 25 L.Ed. 892. United States currency, by reason of the purpose of its creation, its issuance by the Government

**134**

as its unconditional legal obligation to pay a sum certain on demand to the owner thereof, and the part it plays in the commercial life of the nation is essentially negotiable. See Nortz v. United States, 294 U.S. 317, 326, 55 S.Ct. 428, 79 L.Ed. 907; Vermilye & Co. v. Adams Express Co., 21 Wall. 138, 22 L.Ed. 609; Murray v. Lardner, 2 Wall. 110, 122, 17 L.Ed. 857.

It is settled law that a bona fide purchaser of a negotiable instrument, even though stolen from its owner, acquires good title against the owner. Murray v. Lardner, supra; Murray v. Wagner, 2 Cir., 277 F. 32; Pridgen v. Baugh & Sons Co., 4 Cir., 30 F.2d 353; American Express Co. v. Anadarko Bank & Trust Co., 179 Okl. 606, 67 P.2d 55, 110 A.L.R. 972; Annotation 1 A.L.R. 717.

It is also well settled that a transfer of a negotiable instrument in payment of, or as a credit on, an antecedent or preexisting debt constitutes value, enabling the transferee to become a holder in due course. Sawyer v. Prickett, 19 Wall. 146, 166, 22 L.Ed. 105; Gunnison County v. E. H. Rollins & Sons, 173 U.S. 255, 275, 19 S.Ct. 390, 43 L.Ed. 689; Hamilton v. Fowler, 6 Cir., 99 F. 18, 22. See Deitrick v. MacCarthy, D.C.Mass., 13 F.Supp. 850, 852–853.

It is conceded that Stone & Webster Engineering Corporation had no knowledge at the time that the money turned over to it by Bales was stolen. Bales' knowledge, under the circumstances, was not imputed to the Corporation. American National Bank v. Miller, 229 U.S. 517, 33 S.Ct. 883, 57 L.Ed. 1310; In re U. S. Hair Co., 2 Cir., 239 F. 703; Levy & Cohn Mule Co. v. Kauffman, 5 Cir., 114 F. 170, 176–177.

In my opinion, Stone and Webster Engineering Corporation became a holder in due course of the currency received from Bales, and deposited to its account at the bank, with a resulting interest in the currency superior to the claims of the Appellees. In re U. S. Hair Co., supra; National Bank v. Burkhardt, 10 Otto 686, 689–690, 25 L.Ed. 766; Wyer v. Dorchester & Milton Bank, 11 Cush., Mass., 51. It is my view that the judgment should be reversed.